1  SUE ANN SALMON EVANS, State Bar No. 151562
   sevans@mbdlaw.com
2  AMY R. LEVINE, State Bar No. 160743
   alevine@mbdlaw.com
3  SARAH L. W. SUTHERLAND, State Bar No. 239889
   ssutherland@mbdlaw.com
4  MILLER BROWN & DANNIS
5  750 B Street, Suite 2310
   San Diego, CA  92101
6  Telephone: (619) 595-0202
   Facsimile: (619) 702-6202
7

8  Attorneys for Plaintiff
   SAN DIEGO UNIFIED SCHOOL DISTRICT
9

10              UNITED STATES DISTRICT COURT

11             SOUTHERN DISTRICT OF CALIFORNIA

12

13 San Diego Unified School District,        Case No.  08 CV 0039 WQH (WMc)

14              Plaintiff,          **PLAINTIFF'S APPENDIX OF FOREIGN
                                    AUTHORITIES IN SUPPORT OF
15         v.                       OPPOSITION TO DEFENDANTS' MOTION
                                    TO DISMISS COUNTS TWO AND THREE**
16 T.B., a minor, Allison Brenneise and
   Robert Brenneise, his parents, Steven     Date   :    April 24, 2008
17 Wyner and Wyner and Tiffany,              Time   :    10:00 am
                                            Dept   :    Courtroom 4
18              Defendants.                  Judge  :    Honorable William Q. Hayes

19                                           **Trial:**            **none set**

20                                           **Complaint Filed:**   **January 4, 2008**

21

22       Plaintiff SAN DIEGO UNIFIED SCHOOL DISTRICT hereby submits this Appendix of

23 Foreign Authorities in Support of its Opposition to Defendants' Motion to Dismiss Counts II and

24 III of Plaintiff's Complaint.  Attached are copies of the following authorities:

25     1.   *Hawkins v. Berkeley Unified School Dist.*, Slip Copy (N.D.Cal. 2008) 2008 WL
            681880
26
       2.   *Taylor P. ex rel. Chris P. v. Missouri Dept. of Elementary and Secondary Educ.*,
27          Slip Copy (W.D.Mo. 2007) 2007 WL 869502, *1

28                                           1

LB 107503v1

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

3.  *Taylor P. ex rel. Chris P. v. Missouri Dept. of Elementary and Secondary Educ.*, Slip Copy (W.D.Mo., 2007) 2007 WL 2360061, *1, *6

DATED: April 10, 2008                    MILLER BROWN & DANNIS


By:    /s/ Sarah L.W. Sutherland
        SUE ANN SALMON EVANS
        AMY R. LEVINE
        SARAH L.W. SUTHERLAND
Attorneys for Plaintiff
SAN DIEGO UNIFIED SCHOOL DISTRICT

MILLER BROWN & DANNIS
750 B STREET, SUITE 2310
SAN DIEGO, CA 92101

2

PLAINTIFF SAN DIEGO UNIFIED SCHOOL DISTRICT'S APPENDIX OF FOREIGN AUTHORITIES IN SUPPORT OF ITS OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNTS II AND III OF PLAINTIFF'S COMPLAINT; CASE NO. 08 CV 0039

LB 107503v1

Westlaw.

Slip Copy                                                                                  Page 1
Slip Copy, 2008 WL 681880 (N.D.Cal.)
**(Cite as: Slip Copy, 2008 WL 681880)**

Hawkins v. Berkeley Unified School Dist.
N.D.Cal.,2008.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
Keisha HAWKINS, Plaintiff,
v.
BERKELEY UNIFIED SCHOOL DISTRICT,
Defendant.
Berkeley Unified School District, Counter-Claimant,
v.
Jean Murrell Adams, et al., Counter-Defendants.
No. C-07-4206 EMC.
Docket No. 22.

March 11, 2008.

Laurette Michelle Garcia, Adams Esq., A
Professional Corp., Oakland, CA, for Plaintiff.
Peter Warren Sturges, Atkinson, Andelson, Loya
Ruud & Romo, Pleasanton, CA, for
Defendant/Counter-Claimant.
Jean Murrell Adams, Adams Esq., pro se.

**ORDER GRANTING COUNTER-
DEFENDANTS' MOTION TO DISMISS**

EDWARD M. CHEN, United States Magistrate
Judge.
*1 Plaintiff Keisha Hawkins has filed suit against the
Berkeley Unified School District ("District"),
alleging that the District denied her minor child (the
"Student") a free and appropriate public education
("FAPE") as required by the Individuals with
Disabilities Education Act ("IDEA") and seeking
review of an ALJ decision, which was partially
unfavorable to the Student. In its response to the
complaint, the District asserted a counterclaim
against Jean Murrell Adams and her law firm, Adams
Esq. Adams Esq. represented Ms. Hawkins during
the administrative proceedings and represents Ms.
Hawkins in the instant litigation. Ms. Adams and
Adams Esq. (collectively, "Counter-Defendants")
now move to dismiss the counterclaim asserted by
the District.

Having considered the parties' briefs and
accompanying submissions, as well as the oral

argument of counsel, the Court hereby **GRANTS** the
motion to dismiss. For the reasons discussed below,
the counterclaim is dismissed with prejudice.

**I. *FACTUAL & PROCEDURAL BACKGROUND***

In her complaint, Ms. Hawkins alleges that the
Student was born on December 26, 1993, and is a
child with a disability pursuant to the IDEA. *See*
Compl. ¶ 4; *see also* 20 U.S.C.A. § 1401(3) (defining
"child with a disability"). Under the IDEA, every
child with a disability has a right to a FAPE. *See id.* §
1412(a)(1) (A) ("A free appropriate public education
is available to all children with disabilities residing in
the State between the ages of 3 and 21, inclusive
...."). To achieve this goal, the IDEA relies on a
cooperative process between parents and schools. *See*
*generally Schaffer ex rel. Schaeffer v. Weast,* 546
U.S. 49, 53, 126 S.Ct. 528, 163 L.Ed.2d 387 (2005).
Central to this cooperative process is the
individualized education program ("IEP").

An IEP is created for every disabled student and
serves as a road map for the student's education. *See*
*id.* at 53-54. "Each IEP must include an assessment of
the child's current educational performance, must
articulate measurable educational goals, and must
specify the nature of the special services that the
school will provide." *Id.* at 53. IEPs must be reviewed
at least once a year. *See id.*

Parents play a significant role in the IEP process. As
the Supreme Court has explained:

[Parents] must be informed about and consent to
evaluations of their child under the Act. [20 U.S.C]
§ 1414(c)(3). Parents are included as members of
"IEP teams." § 1414(d)(1)(B). They have the right
to examine any records relating to their child, and
to obtain an "independent educational evaluation of
the[ir] child." § 1415(b)(1). They must be given
written prior notice of any changes in an IEP, §
1415(b)(3), and be notified in writing of the
procedural safeguards available to them under the
Act, § 1415(d)(1). If parents believe that an IEP is
not appropriate, they may seek an administrative
"impartial due process hearing." § 1415(f).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 1
Page 1 of 8

Slip Copy
Slip Copy, 2008 WL 681880 (N.D.Cal.)
(Cite as: Slip Copy, 2008 WL 681880)

*Id.* If the parents of a disabled student do not prevail at the administrative due process hearing, they may seek, as Ms. Hawkins does here, review through a civil action in state or federal court. *See* 20 U.S.C. § 1415(i)(2).

**\*2** In the instant case, Ms. Hawkins sought an administrative due process hearing on the basis that the District had denied the Student a FAPE. The due process hearing was held before Judge John A. Hawley (an ALJ) in April and May 2007. *See* Compl. ¶ 6; Rolen Decl., Ex. A (administrative decision, dated May 18, 2007) [hereinafter "Decision"]. The specific issues before Judge Hawley were as follows:

(1) Whether the District denied the Student a FAPE by failing to conduct annual IEP team meetings due on September 29, 2006, to the present;

(2) Whether the District denied the Student a FAPE by moving him from a special day class to general education without Ms. Hawkins's consent;

(3) Whether the District denied the Student a FAPE by failing to provide placement and services to meet his unique needs and reasonably calculated to provide some educational benefit in conformity with the IEP;

(4) Whether the District denied the Student a FAPE by failing to timely produce his educational records to Ms. Hawkins; and

(5) Whether the District denied the Student a FAPE by failing to provide Ms. Hawkins with prior written notice regarding the Student's change of placement, failing to hold the annual IEP meeting, and failing to design an educational placement satisfactory under the IDEA.

*See* Decision at 2.

Judge Thawley found that the District prevailed on Claims 2, 4, and 5 and that the Student prevailed on portions of Claims 1 and 3. *See* Decision at 16. As to Claim 1, the ALJ found that the District violated the Student's right to a FAPE but only during the six-week delay between September 29, 2006, and November 13, 2006, when no IEP meeting was

conducted. *See* Decision at 14 (Legal Conclusion ¶ 12). The ALJ limited the period of the violations because he found that Ms. Hawkins unreasonably refused to participate in the IEP meeting proposed by the District. *See* Decision at 5 (Factual Finding ¶ 9). As to Claim 3, the ALJ found that the Student's placement in school was reasonably calculated to provide some educational benefit and that the District violated Student's right to a FAPE only insofar as it failed to provide speech and language training for approximately eleven weeks between August 31, 2006, and November 13, 2006. *See* Decision at 14-15 (Legal Conclusions ¶¶ 14-15). Again, the time period of the delay was limited because the ALJ found Ms. Hawkins' refusal to participate in the IEP meeting was unreasonable. For purposes of this opinion, it is notable that, although the Student did prevail on portions of Claims 1 and 3, the District contends it had conceded the basis for these partial claims. *See* Decision at 16; *see also* Decision at 3 (discussing two concessions).

On August 16, 2007, Ms. Hawkins filed a complaint in this Court, reiterating the allegations that she made in the administrative due process hearing. In her complaint, Ms. Hawkins alleges that the ALJ erred insofar as he found in favor of the District and requests that this Court reverse the ALJ's findings. *See* Compl. ¶ 32. Ms. Hawkins seeks (1) independent assessments for the Student, (2) an IEP with appropriate notice to her, (3) compensatory education and services, and (4) attorney's fees and costs pursuant to 20 U.S.C. § 1415(i).

**\*3** On September 17, 2007, the District responded to Ms. Hawkins's complaint. As part of its response, the District included a counterclaim for attorney's fees against Ms. Adams and Adams Esq., asserting that the District was the prevailing party on Claims 2, 4, 5 and on portions of Claims 1 and 3 and that Counter-Defendants had filed an administrative complaint that was frivolous, unreasonable, or without foundation or presented an administrative complaint for an improper purpose. *See* 20 U.S.C. § 1415(i)(3)(B)(i)(II)-(III) (providing that a court may, in its discretion, award reasonable attorney's fees to a prevailing party who is a state or local educational agency against the attorney of a parent "who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation" or "if the parent's complaint or subsequent cause of action was

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 1
Page 2 of 8

Slip Copy                                                                                        Page 3
Slip Copy, 2008 WL 681880 (N.D.Cal.)
**(Cite as: Slip Copy, 2008 WL 681880)**

presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation"). In support of its counterclaim, the District points to portions of the ALJ decision, in which the ALJ indicated that Ms. Adams had (1) unreasonably refused to cooperate with the District in scheduling the IEP and (2) improperly failed to review with Ms. Hawkins the administrative complaint which contained demonstrably false allegations.

After the District filed its counterclaim for fees, Counter-Defendants moved the Court for dismissal of the counterclaim with prejudice. This is the motion currently pending before the Court.

## II. *DISCUSSION*

In their motion, Counter-Defendants argue for dismissal on two grounds: (1) for improper joinder under Federal Rule of Civil Procedure 13 and (2) for failure to state a claim pursuant to Rule 12(b)(6). Alternatively, Counter-Defendants ask for a more definite statement pursuant to Rule 12(e).

*A. Improper Joinder*

Counter-Defendants first move to dismiss on the basis of improper joinder under Rule 13. Rule 13 permits the assertion of a counterclaim "against an opposing party." Counter-Defendants argue that under Rule 13, a defendant may assert a counterclaim only against an existing party in the litigation who has already asserted a claim against the defendant. Because only Ms. Hawkins and not Counter-Defendants was an original plaintiff in this litigation, Counter-Defendants maintain that they cannot be joined in a counterclaim under Rule 13.

The Court agrees. "In order for a defending party to assert a compulsory counterclaim, the claim must be raised against an existing party." Moore's *Fed. Prac. & Proc.* § 13.90[2][b] (3d ed.2007); *see also Rainbow Mgmt. Group Ltd. v. Atlantis Submarines Haw., L.P.,* 158 F.R.D. 656, 660 (D.Haw.1994) (holding that co-parties become opposing parties within the meaning of Rule 13(a)*after* one party pleads a crossclaim against the other). Counter-Defendants are not "opposing parties" under Rule 13.

To be sure, Rule 13(h) permits a party to join additional parties (who are not original to the litigation) to a counterclaim or crossclaim, *see*Fed.R.Civ.P. 13(h) ("Rules 19 and 20 govern the addition of a person as a party to a counterclaim or crossclaim"). However, the courts have held that Rule 13(h) requires that any such joinder of a new party be anchored to a counterclaim or cross-claim against an original party. A Rule 13(h)"counterclaim or cross-claim may not be directed solely against persons who are not already parties to the original action but must involve at least one existing party." 6 Wright & Miller, *Fed. Prac. & Proc. Civ.2d* § 1435, at 270-71 (1990).*See, e.g., Brown v. Int'l Union, United Auto., etc.,* 85 F.R.D. 328, 333 (W.D.Mich.1980) (holding that any attempt to add a new person as a cross-defendant under 13(h) is improper if he is the sole cross-defendant because "it is well established ... that the cross-claim must include as a cross-defendant at least one existing co-party"); *United States v. Techno Fund, Inc.,* 270 F.Supp. 83, 85 (S.D.Ohio 1967) (denying defendant's motion to join a nonparty and construing Rule 13(h) to "mean that an additional party may not be brought in for purposes of a counterclaim where the counterclaim is directed solely against the new party and asserts no rights against the original plaintiff"). Here the District's counterclaim names only Adams and Adams Esq. and does not join any of the named Plaintiffs. Joinder is therefore improper under Rule 13(h).

**\*4** The District cites *Taylor P. v. Missouri Department of Elementary and Secondary Education,* No. 06-4254-CV-C-NKL, 2007 U.S. Dist. LEXIS 59570 (W.D.Mo. Aug. 14, 2007), in support of its position, but its reliance on the case is misplaced. In *Taylor P.,* the court permitted the defendant school district to assert a counterclaim against the former attorneys of the student's parents but only because the counterclaim was brought against not only the attorneys but also the parents (original plaintiffs), and therefore joinder was proper under Rule 13(h).*See id.* at \*2, 8-9.

At the hearing, the District argued for the first time that the amendment of the IDEA in December 2004 should be construed to override the joinder rules provided for by Rule 13. The District noted that, prior to the amendment, attorney's fees could only be sought by a prevailing parent. With the amendment,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 1
Page 3 of 8

Slip Copy
Slip Copy, 2008 WL 681880 (N.D.Cal.)
(Cite as: Slip Copy, 2008 WL 681880)

Page 4

fees can now be sought by the prevailing party, be it the plaintiff parent or the defendant educational agency. The educational agency may seek fees against either the parent *or* the parent's attorney. According to the District, since the IDEA now allows a claim for fees solely against the parent's attorney- *i.e.,* it does not require a claim against both the parent and the parent's attorney-then the District should not be required to assert both a claim against Ms. Hawkins and her attorneys in order to have a proper joinder under Rule 13.

While the District's position has a logical appeal, it has cited no case law to support its proposition. More important, the amendment to the IDEA is silent on the issue. The Court is reluctant to imply an override of Rule 13 where Congress could have, but did not, include any qualifying language about joinder procedures in the legislation, particularly since the requirements of Rule 13(h) are longstanding. Finally, even though joinder of Counter-Defendants may not be possible under Rule 13 in the instant case, the District is not necessarily without any relief. The District could initiate a separate suit against Ms. Adams and Adams Esq. for fees pursuant to the IDEA and then seek to have that suit related or consolidated with the instant case.

The Court, therefore, grants Counter-Defendants' motion to dismiss because they were not properly joined to the case at bar pursuant to Rule 13. Although dismissal is warranted on this basis alone, the Court still addresses the merits of Counter-Defendants' contention that, as a matter of law, the District has failed to state a claim for relief because, if so, this would entitle Counter-Defendants to a dismissal with prejudice.

### B. Failure to State a Claim

A complaint may be dismissed for failure to state a claim for which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6); *see also Ileto v. Glock Inc.,* 349 F.3d 1191, 1199-1200 (9th Cir.2003). In its analysis, a court must take "all allegations of material fact as true and construe them in the light most favorable to the nonmoving party." *Parks Sch. of Business v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995). A court may dismiss a complaint "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable

legal theory." *Balistreri v. Pacifica Police Dep't.,* 901 F.2d 696, 699 (9th Cir.1988).

**\*5** Here, Counter-Defendants argue that, as a matter of law, the District's counterclaim fails to state a claim for relief because, during the administrative proceedings, the Student prevailed on at least some of the claims. In response, the District contends that it was the prevailing party on the vast majority of claims and therefore is entitled to fees under 20 U.S.C. § 1415(i)(3)(B)(i). The basic question for the Court, therefore, is whether an educational agency in an IDEA case may be awarded fees if it is only partially successful.

### 1. *Christiansburg Standard*

In order to address this specific question, the Court must, as a preliminary matter, address a dispute between the parties over the interpretation of the IDEA's fee provision. Under the IDEA, a court may award attorney's fees to a prevailing educational agency "against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation, or against the attorney of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation." *Id.* § 1415(i)(3)(B)(i)(II). A court may also award fees to a prevailing educational agency "against the attorney of a parent, or against the parent, if the parent's complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation." *Id.* 1415(i)(3)(B)(i)(III).

As is clear from the language above, an educational agency is not automatically entitled to fees simply because it prevails in an IDEA case; rather, something more must be shown-*e.g.,* that the parent's administrative complaint was frivolous, unreasonable, or without foundation. In this respect, the IDEA fee provision is similar to fee provisions in civil rights cases. The Supreme Court has held that, in civil rights cases, fees shift in favor of a prevailing defendant only where the "plaintiff's action was frivolous, unreasonable, or without foundation," even where the fee-shifting statute does not explicitly include that requirement. *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 54

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 1
Page 4 of 8

L.Ed.2d 648 (1978). In *Christiansburg,* the Court explained that this strict standard does not apply to fee awards for prevailing plaintiffs because (1) "the plaintiff is the chosen instrument of Congress to vindicate 'a policy that Congress considered of the highest priority' " and (2) "when a district court awards counsel fees to a prevailing plaintiff, it is awarding them against a violator of federal law." *Id.* at 418.These policy considerations are inapplicable in the case of a prevailing defendant. *See id.* at 419.The Supreme Court further acknowledged the risk of discouraging civil rights suits by cautioning district courts to "resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a plaintiff be sure of ultimate success. *Id.* at 421-22;*see also Mitchell v. Office of LA County Superintendent of Sch.,* 805 F.2d 844, 847-48 (9th Cir.1986) (reversing defendant's fee award and holding that courts should award defendants fees only in exceptional circumstances; adding that, in this case, the "chilling effect upon civil rights plaintiffs would be disproportionate to any protection defendants might receive").

*6 Notably, the legislative history for the IDEA indicates that its fee provision was in fact intended to codify the *Christiansburg* standard. In the Congressional Record for the December 2004 amendment of the IDEA, Senator Kennedy took note of the "important issue of attorney's fees" and referred to the "language of the conference report that provided the explanation for the attorney's fees language," stating that "the conferees intend[ed] to codify the standards set forth in *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978)." 150 Cong. Rec. S 11543; 150 Cong. Rec. S 11654. Senator Kennedy specifically recited the *Christiansburg* standard, affirming that "attorney's fees may only be awarded to defendants in civil rights cases where the plaintiff's claims are frivolous, without foundation or brought in bad faith." 150 Cong. Rec. S 11543; 150 Cong. Rec. S 11654; *see also* 150 Cong. Rec. H 10006 (stating that "the Conferees intend to codify the standards set forth in *Christiansburg*" ). And the Second Circuit has explicitly held that, in an IDEA case, "[w]ith respect to prevailing-defendant educational agencies, ... Congress explicitly adopted the standard

applicable to prevailing defendants in civil rights cases established in *Christiansburg....*"*Mr. L. v. Sloan,* 449 F.3d 405, 407 n. 2 (2d Cir.2006). The Court therefore applies the *Christiansburg* standard to the counterclaim herein.

2. *Complete v. Partial Victory*

As a preliminary matter, the Court must address an argument that the District raised for the first time at the hearing on Counter-Defendants' motion to dismiss. At the hearing, the District contended that it actually obtained a complete victory at the administrative level, and not a partial one, because even though the Student obtained partial relief for Claims 1 and 3 of the administrative complaint, *see* Part I, *supra,* the District had conceded those partial claims, as the ALJ recognized in his decision. This argument made by the District is related to another argument that was presented in its opposition brief to the motion to dismiss, *i.e.,* that the relief the Student obtained at the administrative level was too insignificant to entitle Ms. Hawkins to prevailing parent status.

The Court does not find either argument persuasive. As to the latter contention, a plaintiff in a civil rights case need not prevail on every issue in the action to achieve prevailing party" status for attorney's fees. *See Texas State Teachers Ass'n v. Garland Independent Sch. Dist.,* 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989) (holding that a plaintiff need not succeed on the entirety of her action in order to be a prevailing party entitled to attorneys fees under § 1988). Rather, the "touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties."*Id.* at 792-93;*see also Estate of Farrar v. Cain,* 506 U.S. 103, 107, 111-12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (stating that a party prevails "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff"). The key is whether there is a "judicially sanctioned change in the legal relationship of the parties."*Buckhannon Bd. & Care Home v. West Va. Dep't of Health & Human Res.,* 532 U.S. 598, 605, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). Here, the ALJ found that the Student partially prevailed on some of the claims and awarded the Student twenty-two hours of compensatory speech and language theory, which

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 1
Page 5 of 8

Slip Copy
Slip Copy, 2008 WL 681880 (N.D.Cal.)
(Cite as: Slip Copy, 2008 WL 681880)

constitutes actual relief modifying the District's behavior in a way that directly benefits him.

*7 As to the first argument-*i.e.,* that the District obtained a complete victory since it had already conceded the claims on which the Student prevailed-the record does not reflect when the District made its concessions. The District has provided no evidence, *e.g.,* that it conceded the matters on which the Student prevailed prior to the filing of the administrative complaint. In fact, at the hearing on the motion to dismiss, the parties did not dispute that the District's initial response to the administrative claim was to deny it and that the concessions were not made until after the administrative hearing commenced. In short, it took the filing of the administrative complaint to obtain any concession from the District. The Court therefore rejects the District's characterization of its victory as a complete, rather than partial, one.

### 3. Partial Success and Hensley

Counter-Defendants' primary argument is that, as a matter of law, the District cannot recover fees because the Student prevailed, at least in part, at the administrative hearing. However, Counter-Defendants have not cited any case holding that, as a matter of law, a defendant is barred from obtaining fees where a plaintiff is partially successful. Likewise, the District has similarly failed to cite any authority demonstrating that a partially prevailing defendant may in fact be awarded fees under the IDEA. In the absence of directly applicable case law and in light of the fact that the attorney fee provision of the IDEA is modeled in part upon other civil rights fee statutes, *see* 150 Cong. Rec. S 11543; 150 Cong. Rec. S 11654; 150 Cong. Rec. H 10006, the Court finds guidance on this question in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). In *Hensley,* the Supreme Court indicated-albeit in *dicta*-that, even where a plaintiff is partially successful, a defendant may still be able to recover fees on plaintiff's unsuccessful claims under 42 U.S.C. § 1988 if such claims are unrelated to the successful claims and are frivolous.[FN1] *See id .* at 435.The Court noted that, where a plaintiff is only partially successful, unrelated unsuccessful claims may be treated as if they were raised in separate lawsuits. *See id.* In this regard, "[i]f the unsuccessful claim is frivolous, the defendant may recover

attorneys fees incurred in responding to it."*See id .*435 n. 10. Thus, in the instant case, where Ms. Hawkins prevailed in part on Claims 1 and 3, the question is whether those claims are related to claims on which she was unsuccessful-*i.e.,* Claims 2, 4, and 5.

> FN1. This Court has found no case in which a court has applied the *dicta* of footnote 10 of *Hensley* and granted attorney's fees to a defendant in a split victory case. Although there is some case law supporting a claim-by-claim analysis in determining whether individual unsuccessful claims were frivolous, all such cases are in the context of a complete defense victory. *See, e.g., Tutor-Saliba Corp. v. City of Hailey,* 452 F.3d 1055, 1058 (9th Cir.2006) (summary judgement granted for defendant on all claims and holding fees permissible on frivolous claims); *Ward v. Hickey,* 996 F.2d 448, 455 (1st Cir.1993) (judgment entered for defendants based on special questions to jury but remanded to determined which claims were frivolous and could support defense fees); *and Quintana v. Jenne,* 414 F.3d 1306, 1309 (11th Cir.2005) (summary judgment granted for defendant on both plaintiff's claims but remanded to ensure fee award based only on frivolous claim); *cf. Marquart v. Lodge 837, Intl. Ass'n of Machinists and Aerospace Workers,* 26 F.3d 842, 851 (8th Cir.1994) (discussing the case law and policy of the standards of prevailing party for plaintiffs and defendants under Title VII and declining to import the broader plaintiff standard for defendant because as a matter of public policy a defendant should not enjoy a plaintiff's standard for achieving "prevailing party" status).

### 4. Relatedness of Claims

In *Hensley,* the Supreme Court explained that, where a plaintiff obtains partial relief, a two-part analysis must be applied. "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he prevailed? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?"*Id.* at 434.If the claims are unrelated, "the final fee award

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 1
Page 6 of 8

Slip Copy
Slip Copy, 2008 WL 681880 (N.D.Cal.)
**(Cite as: Slip Copy, 2008 WL 681880)**

Page 7

may not include the time expended on the unsuccessful claims."*Thorne v. El Segundo,* 802 F.3d 1131, 1141 (9th Cir.1986). If the claims are related, "the court must apply the second part of the analysis, in which the court evaluates the 'significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'"*Id.* (quoting *Hensley,* 461 U.S. at 435). Hence, the issue of relatedness in cases involving split or partial victories is an integral part of the analysis under *Hensley.*

**\*8** The Court noted in *Hensley* that "there is no certain method of determining when claims are 'related' or 'unrelated.' " *Id.* at 437 n. 12.*See also Thorne,* 802 F.2d at 1141 ("The test for relatedness is not precise."). Typically, the Court explained, related claims "will involve a common core of facts or will be based on related legal theories." *Hensley,* 461 U.S. at 435. In these cases, an attorney's time is "devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis," and "[s]uch a lawsuit cannot be viewed as a series of discrete claims." *Id.*

The Ninth Circuit applied *Hensley's* test of relatedness liberally, holding that claims are "related if either the facts *or* the legal theories are the same." *Webb v. Sloan,* 330 F.3d 1158, 1169 (9th Cir.2003) (emphasis in original). The Ninth Circuit has also stated that, in assessing the issue of relatedness, a court should consider "whether the relief sought on the unsuccessful claim 'is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised.' " *Thorne,* 802 F.2d at 1141 (quoting *Mary Beth. v. City of Chicago,* 723 F.2d 1263, 1279 (7th Cir.1983)). Other factors informing the issue of relatedness are "whether the unsuccessful claims were presented separately, whether testimony on the successful and unsuccessful claims overlapped, and whether evidence concerning one issue was material and relevant to other issues." *Id.*

As noted above, of the five issues at the due process hearing, the ALJ found that Hawkins prevailed on portions of Claims 1 and 3. Claim 1 asserted the District denied Student a FAPE by not conducting annual IEP team meetings due on September 29, 2006. Claim 3 asserted the District denied Student a

FAPE by failing to provide placement and services to meet his unique needs and reasonably calculated to provide some educational benefit in conformity with the IEP. The District's claim for attorney's fees can proceed only if Claim 2, 4, or 5 is unrelated to *both* Claims 1 and 3. In light of the policies articulated by the Supreme Court in *Christiansburg-e.g.,* the risk of "chilling" plaintiffs' suits if fee awards were liberally awarded to prevailing defendants-the Court concludes that doubt as to relatedness should be resolved in favor of civil rights plaintiffs and their counsel.

a. *Claim 5*

Claim 5 asserted the District procedurally denied the Student a FAPE by failing to provide Ms. Hawkins with prior written notice regarding Student's change of placement, failing to hold the annual IEP meeting, and failing to design an educational placement satisfactory under the IDEA. Clearly, Claim 5 overlaps with both Claims 1 and 3. It asserts that the District failed to hold the annual IEP meeting and failed to design a satisfactory educational placement program for Student, which are the issues raised in Claims 1 and 3. Notice is integrally related to the Plaintiff's ability to exercise the rights at issue in Claims 1 and 3. Moreover, if no substantive violations of Claims 1 and 3 were found, Claim 5 would for practical purposes be moot. Accordingly, the claims are transactionally related and involve overlapping evidence.

b. *Claim 2*

**\*9** Claim 2 asserted the District denied Student a FAPE by moving him from a special day class to general education without Hawkins' consent. Claims 2 and 3 are related because the adequacy of the education and services that the Student received (at issue in Claim 3) was informed in part by his move from a special day class to general education (at issue in Claim 2). Claims 2 and 3 are also related as both claims concern the issue of placement. Determining whether, as Ms. Hawkins asserts in Claim 2, her consent was needed for the move from a special day class to general education requires a determination of whether this was actually a "change in placement ." Claim 3 is related as it asserts that the Student was denied a FAPE, in part, by failing to provide appropriate placement. *See Burston v. Virginia,* 595

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 1
Page 7 of 8

Slip Copy
Slip Copy, 2008 WL 681880 (N.D.Cal.)
**(Cite as: Slip Copy, 2008 WL 681880)**

Page 8

F.Supp. 644, 650 (E.D.Va.1984) (finding that claims were related as they were "part and parcel of a series of events between plaintiffs and defendants, occurring within a relative short time span in one particular setting"). Were Claim 3 found to be without merit, Claim 2 would be moot for practical purposes. Again there is an overlap in evidence, and the same general course of conduct was at issue. *See Thorne,* 802 F.2d at 1141.

*c. Claim 4*

In Claim 4, Ms. Hawkins sought to remedy a procedural violation, asserting that the District denied the Student a FAPE by failing to completely and timely produce his education records upon her request. Claim 4 is related to Claim 3 because Ms. Hawkins needed the Student's records in order to evaluate whether he was getting the appropriate educational and related services that conformed to his IEP. *See Board of Educ. v. Rowley,* 458 U.S. 176, 189, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982) (noting that a student's substantive right to a FAPE is ensured by the state's obligation to "adopt procedures which would result in individualized consideration of and instruction for each child"). Hence, the same substantive rights were affected.

Furthermore, that Claim 4 is related to Claim 1 is underscored by the ALJ's decision. In his decision, Judge Thawley found that, under Claim 4, the District's initial production of records was not complete and may have been untimely, but he held that this was not a significant procedural error and did not impede Ms. Hawkins's opportunity to participate in the decision-making process because of her unreasonable refusal to conduct an IEP meeting, the same reason why the ALJ limited relief on Claim 1. *Cf. Johnston v. Harris Country Flood Control Dist.,* 869 F.2d 1565, 1582 (5th Cir.1989) (finding that the plaintiff's successful retaliation claim and unsuccessful age and handicap discrimination claims were related and " 'integrally bound up' " because the defendants had raised plaintiff's age and infirmity to defend against the retaliation claim"). Hence, a common core of facts underlie both Claims 1 and 4. *See Hensley,* 461 U.S. at 435;*Thorne,* 802 F.2d at 1141.

*d. Summary*

*10 Accordingly, the Court concludes that each of the claims on which the District was successful at the administrative level (*i.e.,* Claims 2, 4, and 5) was related to at least one claim, if not both, on which the Student was partially successful (*i.e.,* Claim 1 and 2). Because the unsuccessful claims are related to the successful claims, the District may not, as a matter of law, recover fees under *Hensley.* Its counterclaim for fees must therefore be dismissed with prejudice.[FN2]

> FN2. Even if the District did successfully state a counterclaim for fees, it would be with respect to Adams Esq. only, and not Ms. Adam herself. The counterclaim contains no substantive allegations against Ms. Adams in her individual capacity. Thus, dismissal as to Ms. Adams in her individual capacity is further warranted on this ground.

### III. *CONCLUSION*

For the foregoing reasons, the Court grants Counter-Defendants' motion to dismiss. The dismissal shall be with prejudice because even if Counter-Defendants were properly joined to this case, the District has, as a matter of law, failed to state a claim for attorney's fees.

This order disposes of Docket No. 22.

IT IS SO ORDERED.

N.D.Cal.,2008.
Hawkins v. Berkeley Unified School Dist.
Slip Copy, 2008 WL 681880 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 1
Page 8 of 8

Westlaw.

Slip Copy                                                    Page 1
Slip Copy, 2007 WL 869502 (W.D.Mo.)
(Cite as: Slip Copy, 2007 WL 869502)

**H**Taylor P. ex rel. Chris P. v. Missouri Dept. of Elementary and Secondary Educ.
W.D.Mo.,2007.
Only the Westlaw citation is currently available.
United States District Court,W.D. Missouri,Central Division.
TAYLOR P., by and through her parents, CHRIS P. And Carrie C., Plaintiffs,
v.
MISSOURI DEPARTMENT OF ELEMENTARY AND SECONDARY EDUCATION and Poplar Bluff R-I School District, Defendants.
Poplar Bluff R-I School District, Counterclaim Plaintiff,
v.
Chris P., Carrie C., Neal Takiff, and Jennifer Hansen, Counterclaim Defendants.
**No. 06-4254-CV-C-NKL.**

March 20, 2007.

Mark P. Johnson, Sonnenschein, Nath & Rosenthal, Kansas City, MO, for Plaintiffs.
Sarah E. Ledgerwood, Missouri Attorney General's Office, Jefferson City, MO, Teri B. Goldman, Chesterfield, MO, for Defendants.

ORDER

NANETTE K. LAUGHREY, United States District Judge.
*1 Plaintiffs Chris P. and Carrie C. ("the Parents") bring this action on behalf of their daughter, Taylor P., under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401 et seq., to challenge the result of a due process hearing held January 23-27 and March 27-29, 2006. The Poplar Bluff R-I School District ("the District") has counterclaimed for prevailing party attorney's fees against the Parents and their former attorneys under 20 U.S.C. § 1415(i)(3)(B)(i)(II)-(III). Pending before the Court are the Parents' Motion to Dismiss the Counterclaim [Doc. # 8] and the District's Motion to Join Plaintiffs' former lawyers, Neal Takiff and Jennifer Hansen, as Counterclaim Defendants under Federal Rules of Civil Procedure 13(h), 19 and 20. [Doc. # 16]. For the reasons set forth below, the Motion to Dismiss is denied and the Motion to Join is granted.

**I. Factual Background**

For the purposes of the Parents' Motion to Dismiss, the Court accepts as true the following facts alleged in the District's Counterclaim. Due to chronic ear infections when she was two years old, Taylor had tubes surgically inserted into her ears in December 2001. A month earlier, her hearing had been formally assessed at Audiology Associates of Cape Girardeau, Missouri, but the results were deemed invalid. After the tubes were inserted, her hearing was assessed again in January 2002 and determined to be within normal limits bilaterally. Taylor's parents also had her speech and language assessed by Judith Seawel. There was no concern regarding Taylor's hearing acuity at that time and Seawel recommended direct speech therapy. Taylor attended four speech therapy sessions with Seawel from February through April 2002 but those services were discontinued due to "time constraints."

In October 2002, Taylor's parents had her speech and language evaluated at Saint Louis University due to their concerns about her late speech onset, her indistinct speech and her use of only 2-3 word sentences. The evaluator recommended speech and language therapy as soon as possible. A few days later, Taylor's parents informed Berla Bieller of the Poplar Bluff R-I School District ("the District") where they lived that Taylor had a speech delay, but mentioned no other developmental concerns. On October 22, 2002, the District conducted a hearing test which Taylor failed. Her father was given a copy of the procedural safeguards available under the IDEA at that time. Despite the failed hearing test, the District received a note from Taylor's pediatrician on October 31, 2002, stating that her hearing was within normal limits.

On November 15, 2002, a District multidisciplinary team developed an evaluation plan designed to assess whether Taylor was initially eligible under the IDEA. Because Taylor's pediatrician had informed the District that there were no concerns with her hearing, the team did not evaluate in that area. On November 18, 2002, the District provided Taylor's parents with an additional copy of the IDEA procedural

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 2
Page 1 of 7

Slip Copy
Slip Copy, 2007 WL 869502 (W.D.Mo.)
**(Cite as: Slip Copy, 2007 WL 869502)**

safeguards. Taylor's multidisciplinary team convened again on January 10, 2003, to consider the results of her initial evaluation and to determine her eligibility under IDEA. At the conclusion of the meeting, Taylor's team concluded that she qualified for IDEA services under the category of Young Child with a Developmental Delay. At that time, the team identified delays in the areas of communication, including speech and language, but not hearing. The multidisciplinary team developed an initial Individualized Educational Program ("IEP") for Taylor. Her father attended and participated in the meeting and was satisfied with the IEP. He provided written consent for Taylor's initial placement in special education.

**\*2** In January 2003, Taylor began receiving early childhood special education services from the District and continued to receive those services through July 2004. During the period in which she was enrolled in and receiving services from the District, Taylor was not diagnosed as a child with a hearing impairment and her IEP did not address her as a child with a hearing impairment. In April 2003, Taylor's parents had her hearing evaluated again at Audiology Associates in Cape Girardeau, Missouri, but her hearing was within the normal range.

On December 19, 2003, Taylor's IEP team convened to review and revise her IEP. Taylor still did not have a diagnosed hearing impairment at the time. The IEP team convened again on April 2, 2004, to discuss extended school year services. At that time, Taylor's father gave no indication that he was planning to reject the IEP proposed for Taylor or move her to a different school.

During the summer of 2004, Taylor attended extended school year services at the District's early childhood center where she received some services from Wray Ann Williams, a District paraprofessional. At some point, Williams became concerned about Taylor's hearing. She discussed the situation with Taylor's father who seemed frustrated because previous hearing tests had shown no problems. Nevertheless, Taylor's parents had her hearing tested again and she was first diagnosed with a hearing loss on July 12, 2004. The hearing loss was confirmed by St. Louis Children's Hospital on July 14, 2004, and Taylor was fitted with a hearing aide in her right ear. During the second evaluation, the audiologist at the hospital provided the family with information about several private schools, including the Moog Center for Deaf Education ("Moog") in St. Louis County, Missouri. After Taylor's hearing loss was diagnosed, the family scrambled to gather information about their options. Staff at Moog told them that Taylor needed to be in a full-time self-contained program for deaf oral education. Thus, the parents began looking at private schools in St. Louis and considering whether to break up the family.

Meanwhile, Taylor returned to the extended school year services in the District wearing her new hearing aide. Her father informed Williams about Taylor's hearing loss and apologized for becoming angry when they had last spoken. Although they discussed what resources might be available, Taylor's father never indicated that he was considering transferring Taylor to a private school. On August 8, Taylor's mother told Williams that they were touring schools in St. Louis but they didn't yet know what they were going to do. Neither of Taylor's parents communicated her hearing loss diagnosis to anyone else at the District over the summer. Nor did they request a reevaluation or a modification to her IEP in response to the newly diagnosed hearing impairment. Taylor's parents did not ask the District what services it might have to offer or whether it might be willing to contract with Moog or any other school because they did not believe that it was necessary to inform the District of the options they were exploring.

**\*3** On August 13, 2004, Taylor's parents had her cognitive ability assessed at Moog. They did not notify the District of the evaluation. When the District's school began that month, Christy Smith, Taylor's early childhood special education teacher, was informed of Taylor's hearing loss and anticipated that Taylor would return to her early childhood program as discussed in the April 2004 IEP meeting. On August 18, 2004, Smith telephoned the parents' home to schedule a date to enroll Taylor. She was informed by the family's housekeeper that Taylor would not be returning to the District, but would be going to St. Louis to attend school. Taylor's parents never returned Smith's call regarding enrollment.

On August 19, 2004, Taylor's mother signed a release of records form to give the District permission to release records to "2 different schools" with respect to a possible move and transfer. When she picked up

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 2
Page 2 of 7

Slip Copy                                                                                              Page 3
Slip Copy, 2007 WL 869502 (W.D.Mo.)
**(Cite as: Slip Copy, 2007 WL 869502)**

the records, she informed a District staff member that the family was considering two different schools for Taylor; however, she did not specifically mention Moog or state that she and Taylor's father were expecting the District to pay for either of the two schools under consideration. As of August 19, 2004, the District had not been provided with any information to support parents in Taylor's IEP. Further, if Taylor was no longer living in the District (which was unknown at the time), the District would not have been required to conduct a reevaluation or convene her team.

On August 26, 2004, Taylor's parents enrolled her at Moog. Although they had previously received copies of the IDEA procedural safeguards from the District and were capable of reading and understanding those safeguards, they did not inform the District that they were going to place Taylor at Moog and did not, prior to placing Taylor at Moog, seek reimbursement for that placement.

At the time of her enrollment at Moog, Taylor and her father began residing in St. Louis, Missouri, during the school week. On Monday, August 30, 2004, Taylor's father informed Dr. Amy Jackson, the District's Special Education Director, that Taylor was attending Moog and asked her if the District would contract with Moog. Dr. Jackson informed him that Taylor's IEP team would have to convene to consider his request for a change of placement and asked if he would like the District to schedule an IEP meeting. Dr. Jackson did not indicate in any way that the District had agreed to change Taylor's placement or to pay for Moog.

On September 9, 2004, Dr. Jackson sent Taylor's parents a notification to their Poplar Bluff address for an IEP meeting for September 24, 2004. The notification indicated that the purpose of the meeting was to consider a parent request for a change of placement, to develop an IEP if necessary, to review any existing data and to discuss a reevaluation. At that time, Taylor was still not identified under the IDEA as a hearing impaired child and the District had no information concerning the nature and extent of Taylor's hearing loss. Taylor's IEP team met on or about September 24, 2004, to consider the Parents' request for a change of placement to Moog. Neither of Taylor's parents attended and, as a result, the team adjourned. Taylor's father then provided Dr. Jackson

with his new St. Louis address and requested that future meeting notifications be sent there. On October 11, 2004, Taylor's IEP team reconvened and proposed a reevaluation of Taylor. Her father agreed that a reevaluation was necessary and provided consent. He also requested an immediate change of placement to Moog. Because Taylor was not then identified educationally as a student with a hearing impairment and because the District did not believe, at that time, that Moog was her least restrictive environment, the District refused the request for a change in placement. The District offered to provide services to Taylor. Taylor's parents did not file for an IDEA due process hearing at that time in response to the District's refusal to change Taylor's placement.

**\*4** Later that month, Taylor suffered another loss of hearing in her right ear. In response, Moog contacted a physician who determined that Taylor was a candidate for a <u>cochlear implant</u>. During October and November 2004, the District conducted its reevaluation and Taylor wore her hearing aid during the testing. On November 22, 2004, Taylor's multidisciplinary team convened to discuss the reevaluation results and to develop a new IEP for Taylor. At that time, Taylor had not received her <u>cochlear implant</u>. After a review of all testing, the team agreed that Taylor's new IDEA educational diagnosis should include hearing impaired/<u>deafness</u>, sound system disorder, and language impaired. The team developed a new IEP, the first since learning of her diagnosed hearing loss. That IEP was based on the information available to the team in November. Because Taylor never returned to the District, the District never had an opportunity to implement the November IEP or any other IEP developed for Taylor subsequent to her identified hearing loss. At the conclusion of the meeting, Taylor's father told the team that he disagreed with the proposed placement and asked about his options. He was informed about his rights pursuant to the IDEA procedural safeguards previously provided to him.

Although the team members were aware that Taylor would be receiving a <u>cochlear implant</u>, she had not yet had that surgery as of November 2004. Because the team did not know what Taylor's auditory discrimination or speech perception skills would be after the implant, the team agreed to reconvene after Taylor's surgery to review and, if necessary, revise the IEP.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 2
Page 3 of 7

Slip Copy                                                                                           Page 4
Slip Copy, 2007 WL 869502 (W.D.Mo.)
**(Cite as: Slip Copy, 2007 WL 869502)**

On November 23, 2004, Taylor's father filed for an IDEA due process hearing by writing to the Missouri Department of Elementary and Secondary Education. In that request, he stated that the nature of the problem was "inappropriate evaluation of a deaf child and improper/substandard educational plan" and he proposed a change of services to Moog as the resolution. He did not indicate that he would be seeking reimbursement for his unilateral placement of Taylor at Moog. On December 2, 2004, the District sent him a copy of the November 2004 IEP and a written notice of action refusing the requested change of placement to Moog. In addition, the District sent a notice of action refusing to revise Taylor's IEP to address her cochlear implant needs since the request was premature. That notice indicated that the team would reconvene after her implant surgery to address what revisions, if any, might be necessary. On December 3, 2004, the Missouri Department of Elementary and Secondary Education ("DESE") appointed a three-member panel to hear the family's due process complaint.

Taylor's father requested an extension of the IDEA statutory timeline on December 20, 2004, due to Taylor's pending cochlear implant surgery. The panel chair granted that request and extended the time for decision to February 6, 2005. Taylor had cochlear implant surgery on January 10, 2005. On January 11, 2005, Taylor's father corresponded with the District and requested an IEP meeting. The IEP team convened on January 24, 2005 to review and, if necessary, revise Taylor's IEP. At that time, Taylor's cochlear implant, although surgically implanted, had not been initially activated or turned on. The team, therefore, discussed the possible need to revise Taylor's auditory goals after her initial mapping but agreed that it was premature to revise the IEP until that occurred.

*5 On March 2, 2005, Taylor's IEP team again convened. At the meeting, the team updated and developed a new IEP for Taylor based on the information that Moog staff was willing to share. The District has never had the opportunity to implement that IEP for Taylor. Taylor's parents never filed an IDEA due process hearing request with respect to that IEP. On March 4, 2005, Taylor's father requested an additional sixty day extension of the statutory timeline to secure legal counsel. On March 30, 2005,

he informed the panel that the law firm of Whitted & Cleary would be representing him, although no entry of appearance had yet been received. On May 5, 2005, attorney Neal Takiff of Whitted & Cleary corresponded with the panel chair and requested an additional extension of the statutory timeline through August 31, 2005, indicating that he was available for a hearing in September 2005; however, no hearing took place until the following spring.

On December 30, 2005, the Parents' legal counsel filed a statement of issues to be addressed at a due process hearing. The issues, as raised by Mr. Takiff prior to hearing, were as follows:

(a) Whether the District made numerous procedural errors and acted in bad faith when describing proposed educational placement to the parents, which amount to a violation of Taylor's free and appropriate public education;

(b) Whether the IEP and educational placement proposed for Taylor for the 2004-05 school year is reasonably calculated to provide her with a free appropriate public education;

(c) Whether the IEP and educational placement proposed for Taylor for the 2005-06 school year is reasonably calculated to provide her with [Free Appropriate Public Education ("FAPE") ]; and

(d) Whether Taylor's placement at the Moog Oral Center for Deafness is reasonably calculated to provide her with FAPE and meet her complex special education needs.

On January 1, 2006, the District's attorney rejected a settlement proposal and informed Takiff that, because the family failed to provide the requisite advance statutory notice before transferring her to Moog, the District believed that the due process claim was frivolous. The District also informed Takiff that it would consider seeking prevailing party fees against his firm and/or his clients if the matter went to hearing and the District prevailed.

On January 10, 2006, the District filed its Motion to Dismiss with the hearing panel in response to the Parents' December 2005 Statement of Issues. It argued that the Parents' case should be dismissed

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 2
Page 4 of 7

Slip Copy
Slip Copy, 2007 WL 869502 (W.D.Mo.)
**(Cite as: Slip Copy, 2007 WL 869502)**

because of the Parents' failure to inform the District of their unilateral placement of Taylor at Moog and their intent to seek reimbursement as required by the IDEA procedural safeguards provided to the Parents on multiple occasions. A due process hearing was held on January 23-27 and March 27-29, 2006. On March 6, 2006, the District's attorney again rejected a settlement demand proposed by the parents, indicating that the District believed the case to be frivolous and would, if it prevailed at hearing, pursue attorneys' fees.

\*6 On September 18, 2006, the three-member due process hearing panel issued a 2-1 decision in favor of the District. The District has incurred in excess of $35,000 in attorneys' fees and costs up to and including the due process hearing.

## II. Discussion

### A. Motion to Dismiss

The District asserts a counterclaim against Taylor's Parents and their former counsel for attorney's fees incurred litigating their due process complaint and this subsequent civil action appealing the administrative decision. A counterclaim should not be dismissed for failure to state a claim unless it appears beyond doubt that the [counterclaimant] can prove no set of facts to warrant a grant of relief." _Knieriem v. Group Health Plan, Inc.,_ 434 F.3d 1058, 1060 (8th Cir.2006).

The IDEA provides that:

In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs ... to a prevailing State educational agency or local educational agency against the attorney of a parent, or against the parent, if the parent's complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation.

20 U.S.C. § 1415(i)(3)(B)(i)(III). The term "action or proceeding" as used in Section 1415 includes due process hearings and appeals. _Megan C. v. Independent Sch. Dist. No. 625, 57 F.Supp.2d 776,_

782 (D.Minn.1999) ("an IDEA impartial due process hearing initiated pursuant to 20 U.S.C. § 1415(f)... is an 'action or proceeding' brought under § 1415 and [prevailing parties] are thus entitled to attorneys' fees"); _Barlow-Gresham Union High School Dist. No. 2 v. Mitchell, 940 F.2d 1280, 1284 (9th Cir.1991); Mitten v. Muscogee County School Dist., 877 F.2d 932, 935 (11th Cir.1989)._

Taylor's Parents argue that the counterclaim against them must be dismissed because the District has not alleged any facts supporting the second prong of the inquiry laid out in Section 1415(i)(3), namely that their request for a due process hearing or their appeal of that administrative decision was and continues to be made for an improper purpose. Although the Counterclaim explicitly alleges improper motive, the Parents argue that "a well-pleaded complaint must contain something more than mere conclusory statements that are unsupported by specific facts."_Kaylor v. Fields,_ 661 F.2d 1177, 1183 (8th Cir.1981).

The District's Counterclaim alleges that Taylor's parents failed to notify the district of Taylor's hearing loss diagnosis; failed to request a reevaluation of her IEP in view of that diagnosis; unilaterally enrolled her at Moog without notifying the district and without requesting reimbursement for her placement there in accordance with the procedural safeguards provided in the IDEA; caused repeated delays in the due process hearing; and ignored repeated warnings from the District's lawyers that the District viewed the complaint as frivolous because the Parents had failed to comply with IDEA's requirements for alternative placement. After the due process hearing, the three person panel appointed by the Department of Education noted in its decision that there was no issue "of the adequacy of [Taylor's] education or the [the District]'s compliance with the IDEA in that regard prior to the onset of the 2004-05 school year." Due Process Decision at 3. The panel further noted that the District committed no procedural errors in not reevaluating Taylor over the summer of 2004 after her father told Williams of her hearing loss, and that any inadequacy of Taylor's IEP at the beginning of the 2004-05 school year was caused by the Parents failure to notify the District of Taylor's hearing loss and the need for reevaluation. Finally, the panel noted that the Parents' failure to give advance notice to the District of their intent to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 2
Page 5 of 7

Slip Copy                                                                                                    Page 6
Slip Copy, 2007 WL 869502 (W.D.Mo.)
(Cite as: Slip Copy, 2007 WL 869502)

transfer Taylor to Moog "deprived the District from the ability to develop an alternative IEP," and precluded reimbursement.

**\*7** The IDEA provides that

If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary school or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment.

20 U.S.C. § 1412(a)(10(C)(ii). However, the reimbursement "may be reduced or denied," with immaterial exceptions, if
(aa) at the most recent IEP meeting that the parents attended prior to removal of the child from the public school, the parents did not inform the IEP Team that they were rejecting the placement proposed by the public agency to provide a free appropriate public education to their child, including stating their concerns and their intent to enroll their child in a private school at public expense; or

(bb) 10 business days (including any holidays that occur on a business day) prior to the removal of the child from the public school, the parents did not give written notice to the public agency of the information described in item (aa);

Id. § 1412(a)(10(C)(iii). The Parents note that the permissive language "may be reduced or denied" is not mandatory and thus does not mean that their failure to give notice necessarily renders their continued litigation frivolous for an improper purpose. See, e.g., Nein v. Greater Clark County Sch. Corp., 95 F.Supp.2d 961, 984 (D.Ind.2000) (ordering district to reimburse parents despite their failure to give advance notice or transfer to private school).

At this early stage in the litigation, the Court cannot say that the District will be unable to prove any set of facts demonstrating an improper purpose on the part of Taylor's parents. This fact-intensive inquiry is more properly resolved at summary judgment. The

Motion to Dismiss the Counterclaim against the Parents is therefore denied.

**B. Motion to Join**

The District's Counterclaim is also brought against Neal Takiff and Jennifer Hansen, counsel to Taylor's Parents during the due process hearing. The IDEA also provides for prevailing party attorneys fees to be awarded directly against parents' attorneys in certain cases. See 20 U.S.C. § 1415(i)(3)(B)(i)(II)("the court, in its discretion, may award reasonable attorneys' fees as part of the costs ... to a prevailing party ... against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation, or against the attorney of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation"). The Parents move to dismiss the Counterclaim against their former attorneys because the attorneys are not parties to the suit.

**\*8** The District acknowledges that Neal Takiff and Jennifer Hansen were not originally parties to the suit, but they were named as Counterclaim Defendants in the District's answer. Although the District has not yet served Takiff and Hansen with the Counterclaim, its has moved for the Court's leave to join them as counterclaim defendants under Federal Rules of Civil Procedure 13(h) and 20.[FN1] Taylor's parents filed no response to the District's joinder motion and their time to do so has now expired.

> FN1. The District has also moved to join Takiff and Hansen as necessary and indispensable parties under Rule 19. Because the Court concludes that their joinder is permissive under Rule 20(a), it need not address joinder under Rule 19.

Under the Federal Rules of Civil Procedure, "[p]ersons other than those made parties to the original action may be made parties to a counterclaim or cross-claim in accordance with the provisions of Rules 19 and 20." Fed.R.Civ.P. 13(h). Rule 20 provides in pertinent part, "All persons ... may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or rising out of the same transaction, occurrence, or series of transactions

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 2
Page 6 of 7

Slip Copy
Slip Copy, 2007 WL 869502 (W.D.Mo.)
**(Cite as: Slip Copy, 2007 WL 869502)**

Page 7

or occurrences and if any question of law or fact common to all defendants will arise in the action."Fed.R.Civ.P. 20. The relief sought against Takiff and Hansen is prevailing party attorney's fees which arise from the same transaction or occurrence for which the District seeks attorney's fees against the Parents. Whether the Parents' pursuit of the due process hearing was frivolous or for an improper purpose is a common issue of fact bearing on the liability of both sets of counterclaim defendants. Permissive joinder of the former attorneys is therefore available under Rule 20. *See Waterloov Gutter Protection Sys. Co. v. Absolute Gutter Protection, L.L.C.,* 64 F.Supp.2d 398, 407 (D.N.J .1999) (allowing joinder of plaintiff's former attorneys as counter-claim defendants).

**III. Conclusion**

Accordingly, it is hereby

ORDERED that Plaintiffs' Motion to Dismiss the Counterclaim [Doc. # 8] is DENIED. It is further

ORDERED that the District's Motion to Join Takiff and Hansen as Counterclaim Defendants [Doc. # 16] is GRANTED. The District has twenty days from the date of this Order to effect service on Takiff and Hansen or the Counterclaim against them will be dismissed for failure to prosecute.

W.D.Mo.,2007.
Taylor P. ex rel. Chris P. v. Missouri Dept. of Elementary and Secondary Educ.
Slip Copy, 2007 WL 869502 (W.D.Mo.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 2
Page 7 of 7

Westlaw.

Slip Copy                                                                                    Page 1
Slip Copy, 2007 WL 2360061 (W.D.Mo.)
**(Cite as: Slip Copy, 2007 WL 2360061)**

**H**Taylor P. ex rel. Chris P. v. Missouri Dept. of
Elementary and Secondary Educ.
W.D.Mo.,2007.
Only the Westlaw citation is currently available.
United States District Court,W.D. Missouri,Central
Division.
TAYLOR P., by and through her parents, CHRIS P.
and Carrie C., Plaintiffs,
v.
MISSOURI DEPARTMENT OF ELEMENTARY
AND SECONDARY EDUCATION and Poplar Bluff
R-I School District, Defendants.
Poplar Bluff R-I School District, Counterclaim
Plaintiff,
v.
Chris P., Carrie C., Neal Takiff, and Jennifer Hansen,
Counterclaim Defendants.
**No. 06-4254-CV-C-NKL.**

Aug. 14, 2007.

Mark P. Johnson, Sonnenschein, Nath & Rosenthal,
Kansas City, MO, for Plaintiffs and Counterclaim
Defendants.
Sarah E. Ledgerwood, Missouri Attorney General's
Office, Jefferson City, MO, Teri B. Goldman,
Chesterfield, MO, for Defendants.
Gregory P. Goheen, McAnany, Van Cleave &
Phillips, P.A., Kansas City, KS, for Counterclaim
Defendants.

**ORDER**

NANETTE K. LAUGHREY, United States District
Judge.
**\*1** Plaintiffs Chris P. and Carrie C. ("the Parents")
bring this action on behalf of their daughter, Taylor
P., under the Individuals with Disabilities Education
Act ("IDEA"), 20 U.S.C. § 1401 et seq., to challenge
the result of a due process hearing held January 23-27
and March 27-29, 2006. The Poplar Bluff R-I School
District ("the District") has counterclaimed for
prevailing party attorney's fees against the Parents
and their former attorneys ("Takiff and Hansen")
under 20 U.S.C. § 1415(i)(3)(B)(i)(II). Pending
before the Court is Takiff and Hansen's Motion to
Dismiss the Counterclaim [Doc. # 30]. For the
reasons set forth below, the Motion to Dismiss is

denied.

**I. Background**

For the purposes of this Motion to Dismiss, the Court
accepts as true the facts alleged in the District's
Counterclaim which were referenced in this Court's
order denying the Parents' motion to dismiss the
counterclaim [Doc. # 28].

In support of their motion to dismiss the
counterclaim, Takiff and Hansen have raised four
issues in their pleading: 1) personal jurisdiction; 2)
subject matter jurisdiction (ripeness); 3) statute of
limitations; and 4) failure to state a claim upon which
relief can be granted. Additionally, Takiff and
Hansen argue that at the time the Parents sought a
due process hearing, there was no statutory authority
to award attorney fees to a school district even when
it was the prevailing party.

**II. Discussion**

**A. Retroactivity**

The District's claim for attorney's fees is based on the
2004 version of the IDEA. In that year, the IDEA
was changed to permit a prevailing local educational
agency to recover attorney fees against the attorney
of a parent who files a complaint that is frivolous,
unreasonable, or without foundation, or against the
attorney of a parent who continues to litigate after the
litigation clearly becomes frivolous, unreasonable, or
without foundation. *See*20 U .S.C.
1415(1)(3)(b)(i)(II). This provision did not go into
effect until July 1, 2005, eight months after the
Parents filed their request for a due process hearing.

Takiff and Hansen argue that the 2004 version of the
IDEA should not be applied retroactively in this case
because the statute doesn't authorize a retroactive
application and there is a presumption against
retroactivity. The District argues that this case falls
within the recognized *Bradley* exception to the
presumption against retroactivity and should be
applied from the Parents' initial filing in November
2004.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 3
Page 1 of 5

Slip Copy
Slip Copy, 2007 WL 2360061 (W.D.Mo.)
**(Cite as: Slip Copy, 2007 WL 2360061)**

Page 2

When a case implicates a federal statute enacted after the events in the suit, the Court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. *See Landgraf v. USI Film Products,* 511 U.S. 244, 280 (1994). The text of 2004 amendments to the IDEA do not evince any clear expression of congressional intent.[FN1] *See Tucker by Tucker v. Calloway County Bd. of Educ.,* 136 F.3d 495, 501 (6th Cir.1998). When a statute contains no such express provision, the court must determine whether application of the amendment would "increase a party's liability ... with respect to transactions already completed," and, if so, the traditional presumption is that the amended statute should not control. *See Bowen v. Georgetown University Hosp.,* 488 U.S. 204, 208 (1988); *Landgraf,* 511 U.S. at 280.

> FN1. The previous Handicapped Children Protection Act provision for attorney's fees for claims raised under the Education of the Handicapped Act (after which the IDEA was modeled) was explicitly retroactive, *see Yaris v. Special School Dist. of St. Louis County,* 661 F.Supp. 996, 998 (E.D.MO, 1987), suggesting that the omission of comparable language in the 2004 act "cannot realistically be attributed to oversight or to unawareness of the retroactivity issue."*See Landgraf,* 511 U.S. at 256. This alone is a strong indication that the new attorney fee provision should not be applied retroactively.

**\*2***Bradley* is a narrow exception to the Bowen presumption against retroactivity. *See Bradley v. School Bd. of City of Richmond,* 416 U.S. 696 (1974). In *Bradley,* the Supreme Court retroactively applied a new fee provision allowing prevailing plaintiffs to seek attorney's fees in school desegregation cases. However, this case is distinguishable from *Bradley.*

*Landgraf* makes clear that *Bradley* was only a narrow exception to the *Bowen* presumption. *See Landgraf,* 511 U.S. at 277-279. In fact, *Bradley's* directive to apply the law in effect at the time of decision explicitly includes the caveat that it does not apply where "doing so would result in manifest injustice."*Bradley,* 416 U.S. at 711. *Landgraf* points out that there was no injustice in the narrow *Bradley*

situation for two reasons-both of which distinguish this case.

First, imposition of the one-way fee provision against the school board in *Bradley* did not alter the Board's previously existing "constitutional responsibility for providing pupils with a nondiscriminatory education."*Bradley,* 416 U.S. at 721. In other words, because the board already had a constitutional responsibility to act in a certain way, the new fee provision alone could not be a legitimate reason for the board to change its "predicate actions" respecting the students. This case is different. Here, the new portion of the fee provision operates against parents and their lawyers. Parents and their lawyers have no previous, overriding constitutional obligation to refrain from requesting an administrative hearing; therefore, a fee provision could legitimately affect that predicate behavior.

Secondly, in applying the new fee provision, the *Bradley* court saw no manifest injustice "in light of the prior availability of a fee award and the likelihood that fees would be assessed under pre-existing theories."*Bradley,* 416 U.S. at 721. The court concluded that "the new fee statute simply did not impose an additional or unforeseeable obligation upon the school board."*Id.* The District has identified no pre-existing theories under which complaining parents or their attorneys could be held liable for prevailing-party attorney's fees. Therefore, this amendment does impose an unforeseeable obligation upon plaintiffs requesting a hearing and it would be manifestly unjust to retroactively apply the attorney fee shifting provision of the 2004 IDEA under these circumstances.

The District alternatively claims that the fee provision should be applied "at least as of December 30, 2005" (Counterclaim, p. 31 ¶ 62) because that was when Takiff and Hansen filed a new statement of issues to be decided during the administrative hearing-replacing the Parents' initial, more general filing from a year earlier. When Takiff and Hansen filed the revised statement, the July 5, 2005 amendments to the IDEA were already in effect. The District in oral argument asserted that amending the issues allowed the Parents and their lawyers an opportunity to re-evaluate their claim under the demands of the new law and therefore the new law imposed no unforeseen obligations. Consequently,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 3
Page 2 of 5

Slip Copy                                                                                                                                          Page 3
Slip Copy, 2007 WL 2360061 (W.D.Mo.)
**(Cite as: Slip Copy, 2007 WL 2360061)**

the District argues that a "frivolous action" was effectively initiated after the new law was in place, and the new provision for attorney's fees should apply from Dec. 30 onward.

**\*3** This argument would be persuasive, but the administrative panel decided that the Dec., 2005 statement of issues was not actually an amendment at all. *See* Due Process Decision at 2 n. 1. Rather, the panel decided that issues 1, 2, and 4 were only a "more specific listing of what was expressed in the original due process request and not additional issues."*Id.* And the panel dismissed issue 3 as a matter of law without hearing evidence related to it. *Id.* Therefore, the Dec. 2005 statement of issues did not restart the action and cannot serve as the predicate act of "filing" a frivolous complaint which the IDEA proscribes. *See*20 U.S.C. 1415(I)(3)(b)(i)(II).

Finally, although the 2004 IDEA cannot be applied retroactively to the date of the initial filing of the complaint, and Takiff and Hansen's restatement of the issues can not be considered "initiating" a frivolous lawsuit after the 2004 IDEA was in effect, the Court cannot say that the District is unable to prove that under any circumstances Takiff and Hansen continued to litigate after the effective date of the statue what had become a frivolous or unreasonable claim. Counterclaim, p. 31 ¶ 62(b); *see Fernandez-Vargas v. Gonzales,* 126 S.Ct. 2422, 2432 (2006). Therefore, the Court will not dismiss the counterclaim based on Takiff and Hansen's retroactivity argument.

**B. Personal Jurisdiction**

Takiff and Hansen allege that this Court does not have personal jurisdiction over them because the District did not have leave of this Court to join them as defendants to the counterclaim against the Parents. However, no such leave of court is required. Rule 13(h) states: "Persons other than those made parties to the original action may be made parties to a counterclaim ... in accordance with the provisions of Rules 19 and 20."Joining a party under Rule 20 does not require leave of court as Takiff and Hansen suggest; rather, the filing of the counterclaim itself joined Takiff and Hansen to the action as counterclaim defendants.

In addition, Takiff and Hansen argue that they have not been properly served pursuant to Rule 4. However, the personal service of Mar. 30, 2007 is adequate under Rule 4; and it was effected within the time frame permitted by this Court. *See*Fed. R. Civ. P 4; *See* Doc. # 28. Therefore, this Court has personal jurisdiction over Takiff and Hansen as they have been properly joined and served.

**C. Subject Matter Jurisdiction**

**1. Ripeness**

Takiff and Hansen assert that this court does not have subject matter jurisdiction over the counterclaim because an action to recover attorney's fees under 20 U.S.C. § 1415(i)(3)(B) is generally not considered ripe until the administrative proceeding is finally decided, including all appeals. However, the District is already the prevailing party at the administrative hearing. The Eighth Circuit has held that a plaintiff is a "prevailing party" if he obtains "actual relief on the merits of his claim [that] materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."*Birmingham v. Omaha School Dist.,* 298 F.3d 731, 734 (8th Cir.2002) (quoting *Farrar v. Hobby,* 506 U.S. 103, 111-12, 113 (1992)). Similarly, it is logical to assume that a defendant is a prevailing party for purposes of the IDEA fee provision if, after "any action or proceeding," he is not required to provide any relief or benefit to the plaintiff. *See*20 U.S.C. § 1415(i)(3)(B). Therefore, at least for purposes of the Motion to Dismiss, the District is a prevailing party within the meaning of the IDEA because it was not required to modify its behavior in any way. *See* Due Process Decision at 59.

**\*4** The fact that the Parents have sought judicial review of the administrative decision does not make the attorney's fee claim unripe. *See Poole v. Rourke,* 779 F.Supp 1546 (E.D.Cal.1991). As noted by the Poole Court, the party seeking fees "is not required to wait until all post-judgment appeals have been exhausted to collect his fee."*Id.; see also Animal Lovers Volunteer Ass'n v. Carlucci,* 867 F.2d 1224, 1225 (9th Cir.1989)

Therefore, the District's counterclaim is ripe. The logistical issues that Takiff and Hansen raise may be resolved simply by delaying action on the request for

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 3
Page 3 of 5

Slip Copy
Slip Copy, 2007 WL 2360061 (W.D.Mo.)
**(Cite as: Slip Copy, 2007 WL 2360061)**

attorney's fees until after the merits of the appeal have been adjudicated. These logistical concerns, however, do not deprive the Court of jurisdiction.

### 2. Exhaustion of Administrative Remedies

Takiff and Hansen further allege that this Court cannot have subject matter jurisdiction until the District has exhausted all administrative remedies. However, a party is not required to exhaust administrative procedures and remedies where doing so would be futile or where the administrative agency would be unable to provide adequate relief. *See Monahan v. State of Neb., 645 F.2d 592, 597 (8th Cir.1981); Blackmon v. Springfield R-XII School Dist ., 198 F.3d 648, 656 (8th Cir.1999); See W.B. v. Matula, 67 F.3d 484, 496 (3rd Cir.1995)* (holding that the IDEA does not require exhaustion where the relief sought is unavailable in an administrative proceeding).

In this case, the administrative panel explicitly found, and this court agrees, that the IDEA does not authorize administrative panels to award attorney's fees.[FN2] *See* Due Process Decision at 2 n. 2. Under the plain language of the IDEA, only "the court" is authorized to award fees. Therefore, it would be futile to require further administrative exhaustion under the facts of this case.

> FN2. Although it was not required, the District did request attorney's fees from the panel and that request was denied. *See* Due Process Decision at 2 n. 2.

Furthermore, even if the administrative panel were authorized to award fees under the IDEA, Attorney's fee inquiries largely present questions of law which do not require administrative agency expertise. *See Vultaggio ex rel. Vultaggio v. Board of Educ., Smithtown Central School Dist., 216 F.Supp.2d 96, 103 (E.D.N.Y.2002).* Consequently, there is no reason to require administrative exhaustion.

### C. Statute of Limitations

Takiff and Hansen argue that the appropriate statute of limitations for requesting attorney's fees in this case is 30 days, as provided in the Missouri Administrative Procedures Act. However, Missouri

law does not control these proceedings. Rather, this action is procedurally governed directly by the text of the IDEA. *See*20 U.S.C. § 1415(i)(2)(A); *See* Due Process Decision at 59.

The IDEA itself does not include a time limitation for seeking attorney's fees. When Congress does not provide a statute of limitations for a federal cause of action, a court should "borrow" the most analogous state law. *See Lampf, Pleva, Lipkind. Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 355 (1991); See Aaron v. Brown Group, Inc., 80 F.3d 1220, 1223 (8th Cir.1996).*

**\*5** The 30-day limitation provided in the Missouri Administrative Procedures Act (MAPA) is not an analogous state law because the District's counterclaim is a federal cause of action entirely separate from the administrative hearing. Indeed, the administrative panel in an IDEA case does not have the power to award attorney's fees. Therefore, seeking prevailing party fees under the IDEA is not analogous to the administrative process.

Furthermore, the MAPA 30-day limit does not apply because the Eighth Circuit has recognized that prevailing parties may claim attorney's fees by motion pursuant to Rule 54(d)(2) at the conclusion of an appeal under 1415(i)(2).*See Birmingham v. Omaha Sch. Dist., 298 F.3d 731, 733 (8th Cir.2002)* (noting that the parents' attorney filed a motion for attorney fees upon remand after an appeal of the district court's decision in an IDEA action). Since a prevailing party can file for attorney's fees even at the conclusion of an appeal, Congress could not have intended a limit as short as thirty days for seeking attorney's fees from administrative procedures.

Rather, the state statute of limitations most analogous to the District's counterclaim is the general limitation on statutory liability found in Mo. Ann. Stat. § 516.120.2, imposing a five-year limitation for "an action upon [any] liability created by a statute other than a penalty or forfeiture."*See Zipperer By and Through Zipperer v. School Bd. of Seminole County, Fla., 111 F.3d 847, 851 (11th Cir.1997)* (sound policy suggests allowing more time for filing an action for attorney's fees under the IDEA than for filing a substantive appeal of the administrative decision); *see e.g., Robert D. v. Sobel, 688 F.Supp. 861, 864 (S.D.N.Y.1988)* (borrowing the three-year

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 3
Page 4 of 5

Slip Copy                                                                                                                    Page 5
Slip Copy, 2007 WL 2360061 (W.D.Mo.)
**(Cite as: Slip Copy, 2007 WL 2360061)**

statute of limitations for actions to recover upon a liability imposed by statute). Therefore, for purposes of this case, the Court adopts a five year statute of limitations for the District's claim for attorney fees.

**D. The District's Counterclaim Does Not Fail to State a Claim upon Which Relief Can Be Granted**

A counterclaim should not be dismissed for failure to state a claim unless it "appears beyond doubt that the [counterclaimant] can prove no set of facts to warrant a grant of relief."*Knieriem v. Group Health Plan, Inc.,* 434 F.3d 1058, 1060 (8th Cir.2006). The IDEA allows the District to seek attorney's fees from the "attorney of a parent who continue[s] to litigate after the litigation clearly became frivolous, unreasonable, or without foundation."20 U.S.C. 1415(i)(3)(B)(ii). Takiff and Hansen argue that because the hearing panel voted 2-1 against them on some points, their litigation was not frivolous as a matter of law. They offer no legal support for this assertion. Additionally, they contend that no facts are presented or alleged which could possibly warrant an award of fees in this case. However, the District's Counterclaim alleges that Takiff and Hansen ignored repeated warnings from the District's lawyers that the District viewed the complaint as frivolous because the Parents had failed to comply with IDEA's requirements for alternative placement. Furthermore, after the due process hearing, the three person panel appointed by the Department of Education noted in its decision that the District committed no procedural errors in not reevaluating Taylor over the summer of 2004 after her father told Williams of her hearing loss, and that any inadequacy of Taylor's IEP at the beginning of the 2004-05 school year was caused by the Parents' failure to notify the District of Taylor's hearing loss and the need for reevaluation. Finally, the panel noted that the Parents' failure to give advance notice to the District of their intent to transfer Taylor to Moog "deprived the District from the ability to develop an alternative IEP," and precluded reimbursement.

**\*6** At this early stage in the litigation, the Court cannot say that the District will be unable to prove any set of facts demonstrating that the litigation ever became frivolous, unreasonable, or without foundation. This fact-intensive inquiry is more properly resolved at summary judgment. The Motion to Dismiss the Counterclaim against Takiff and

Hansen is therefore denied.

**III. Conclusion**

Accordingly, it is hereby

ORDERED that Plaintiffs' Motion to Dismiss the Counterclaim [Doc. # 30] is DENIED.

W.D.Mo.,2007.
Taylor P. ex rel. Chris P. v. Missouri Dept. of Elementary and Secondary Educ.
Slip Copy, 2007 WL 2360061 (W.D.Mo.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 3
Page 5 of 5