1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   TYLER BRENNEISE, ALLISON                    CASE NO. 08cv28 WQH (WMc);
     BRENNEISE AND ROBERT                                 08cv39 WQH (WMc)
12   BRENNEISE,

13                            Plaintiffs,        **ORDER**

     vs.
14
     SAN DIEGO UNIFIED SCHOOL
15   DISTRICT,

16                            Defendant.

17          The matters before the Court are (1) the Motion to Consolidate Cases 08cv28 and

18   08cv39 (08cv28, Doc. # 9) filed by San Diego Unified School District; (2) the "Motion to

19   Dismiss Second Cause of Action against All Parties with Prejudice; to Dismiss Third Cause

20   of Action against Steven Wyner and Wyner and Tiffany with Prejudice" (08cv39, Doc. # 19)

21   filed by Tyler Brenneise, a minor, Allison Brenneise and Robert Brenneise, his parents, Steven

22   Wyner, and the law firm of Wyner and Tiffany; and (3) the "Amended Motion to Dismiss

23   Third and Fourth Claims for Relief" (08cv28, Doc. # 15) filed by San Diego Unified School

24   District.

25                            **Background**

26          This action arises under the Individuals with Disabilities Education Act ("IDEA"), 84

27   Stat. 175, as amended, 20 U.S.C. §§ 1400, *et seq.* (2000 ed. and Supp. IV), which "confers

28   upon disabled students an enforceable substantive right to public education in participating

States, and conditions federal financial assistance upon a State's compliance with the substantive and procedural goals of the Act." *Honig v. Doe,* 484 U.S. 305, 310 (1988).

A.    Factual Allegations[1]

Tyler Brenneise is a teenage boy with autism and late diagnosed Phenylketonuria, a genetic metabolic disorder. Tyler ingests part of his diet through daily gastrostomy tube ("G-Tube") feedings. Tyler is eligible for special education and related services under the IDEA. Allison and Robert Brenneise are Tyler's parents.[2] San Diego Unified School District ("San Diego Unified") is a public school district organized and existing under the laws of the State of California, and is located within San Diego County.

In October 2003, Tyler's parents removed him from his school placement because they disagreed with the implementation of Tyler's Individualized Education Program ("IEP") by San Diego Unified. In July 2006, Tyler's parents provided conditional consent to an extended school year ("ESY") IEP, which called for Tyler to return to a school placement and attend Coronado Academy within the Coronado Unified School District. The ESY IEP required San Diego Unified to convene an IEP meeting by August 30, 2006 to develop an IEP for Tyler for the 2006-2007 school year.

On or about July 31, 2006, the Brenneises filed a request for a compliance complaint investigation ("CDE Compliance Complaint") with the California Department of Education ("CDE"). The CDE Compliance Complaint challenged San Diego Unified's implementation of the ESY IEP.

On August 30, 2006, as required by the ESY IEP, San Diego Unified convened a meeting to develop an IEP for Tyler for the 2006-2007 school year. The Brenneises did not provide consent to San Diego Unified's proposed August 30, 2006 IEP.

On November 27, 2007, the CDE issued a ruling with respect to the CDE Compliance Complaint. The CDE found San Diego Unified non-compliant with the IDEA for failing to

---

[1] The factual allegations are taken from both the Brenneises' and San Diego Unified's Complaints.

[2] Tyler, Allison and Robert Brenneise will collectively be referred to as (the "Brenneises").

1  implement Tyler's ESY IEP, and ordered San Diego Unified to provide Tyler with
2  compensatory education.

3        On or about November 29, 2006, after convening several more IEP meetings to develop
4  an IEP for Tyler for the 2006-2007 school year and failing to obtain the Brenneises' consent
5  to any of San Diego Unified's proposed IEP offers, San Diego Unified filed a request for a due
6  process hearing with the Office of Administrative Hearings ("OAH").  San Diego Unified
7  requested that the OAH establish that its assessment of Tyler was appropriate.

8        On December 4, 2006, San Diego Unified convened another meeting to develop an IEP
9  for Tyler for the 2006-2007 school year.  The Brenneises did not provide consent to San Diego
10  Unified's proposed December 4, 2006 IEP.  San Diego Unified amended its due process
11  complaint with the OAH to request that the OAH establish that the December 4, 2006 IEP
12  offer was compliant with the IDEA.

13        On or about January 29, 2007, the Brenneises cross-filed a request for a due process
14  hearing with the OAH.  The Brenneises alleged that San Diego Unified's August 30, 2006 and
15  December 4, 2006 IEPs denied Tyler a free and appropriate public education ("FAPE") in
16  violation of the IDEA.  The Brenneises also moved to consolidate their due process filing with
17  San Diego Unified's pending due process filing.   The OAH granted the motion for
18  consolidation.

19        B.     The OAH Decision

20        The OAH convened the consolidated due process hearing on May 14, 2007 - June 1,
21  2007, June 11, 2007 - June 13, 2007, June 19, 2007 - June 20, 2007, and July 11, 2007 - July
22  20, 2007.  On or about October 3, 2007, the OAH issued a written decision ("the OAH
23  Decision") that identified 18 separate issues.[3]  The OAH Decision states: "The Student

24

25        [3] The issues identified in the OAH Decision are as follows: Issues related to assessments: (1)
26  Is the District's Multidisciplinary Assessment dated July 14, 2006 appropriate? (2) Did the District
   fail to assess Student in all areas of unique need during the 2006-2007 school year? (3) Did the
27  District deny Student a FAPE during the 2006-2007 school year by failing to assess Student before
   eliminating physical health services? (4) Did the District deny Student a FAPE during the 2006-2007
28  school year by failing to assess Student's behavioral needs and failing to develop an appropriate
   behavior plan? (5) Did the District violate the IDEA by failing to reimburse Student's parents for the
   Independent Educational Assessments obtained by the parents? Issues Related to the August 30, 2006

prevailed on issues 10, 14 and 15.  The District prevailed on the remaining issues." *OAH Decision,* p. 75.

With respect to issue 10, the OAH Decision concluded that the December 4, 2006 IEP "failed to provide for specialized physical health care services Student would need to access his education and failed to provide an appropriate plan to transition Student from his home placement to a school placement." *OAH Decision,* p. 66.  The OAH Decision stated that "the December 4 IEP proposal did offer student a FAPE in all other respects." *Id.*  With respect to issue 14, the OAH Decision concluded that the Brenneises met their burden of proving that Tyler's "one-to-one behavioral aide was not the appropriate person to assist [Tyler] with his G-Tube feeding." *Id.* at 69.  The OAH Decision modified the December 4, 2006 IEP to require Tyler's G-Tube feedings to occur daily in the nurse's office where a "school nurse will be present and will personally assist the student with the student's G-Tube feeding." *Id.* at 74. With respect to issue 15, the OAH Decision concluded that the Brenneises met their burden of proving that the "August 30 and December 4 IEPS denied [Tyler] a FAPE because they failed to include appropriate transition plans which identified the services to be performed

---

Proposed IEP: (6) Did the District deny Student a FAPE during the 2006-2007 school year by failing to have an IEP in place at the commencement of the school year on September 5, 2006? (7) Did the District deny Student a FAPE during the 2006-2007 school year by failing to have appropriate team members - including Student's parents - at the August 30, 2006 IEP meeting? (8) Did the District deny Student a FAPE for the 2006-2007 school year by failing to propose an appropriate placement for Student in the August 30, 2006 IEP? (9) Did the District deny Student a FAPE for the 2006-2007 school year by failing to propose appropriate goals and objectives in the August 30, 2006 IEP? Issues Related to the December 4, 2006 Proposed IEP: (10) Did the December 4, 2006 IEP offer Student a FAPE to meet Student's unique needs and allow him to benefit from his education? (11) Did the District deny Student a FAPE in the December 4, 2006 IEP by failing to develop annual goals and objectives that would enable Student to make educational progress and access the grade level curriculum? (12) Did the District deny Student a FAPE in the December 4, 2006 IEP by failing to provide adequate staff development and training in the use of Student's specialized software programs which Student needs to access the curriculum? (13) Did the District deny Student a FAPE by failing to propose a program that would provide Student with the level of services specified in the December 4, 2006 IEP? Issues Related to Both IEPs: (14) Did the District deny Student a FAPE for the 2006-2007 school year by failing to develop an appropriate health care plan that would enable Student to attend school safely? (15) Did the District deny Student a FAPE for the 2006-2007 school year by failing to develop and implement an appropriate transition plan to transition Student from a home school program to a school-based program? (16) Did the District violate the IDEA by failing to implement a "stay put" placement as of July 25, 2006? (17) Did the District deny Student a FAPE for the 2006-2007 school year by failing to allow meaningful participation in the IEP process by Student's parents? (18) Did the District deny Student a FAPE during the 2006-2007 school year by failing to consider the goals and objectives proposed by Student's parents?

during the operation of the plan and failed to permit Student's parents to be part of the decision making process on the educational placement of the child." *Id.* at 71. The OAH Decision modified the December 4, 2006 IEP to include Tyler's mother as a participant in each of the collaboration meetings regarding Tyler's transition plan, and to provide that "until [Tyler] reaches phase four of the transition plan [Tyler's] District-funded DIS services will continue with his current NPA providers and at his current levels of service, except for the services of ACES." *Id.* at 74.

The OAH Decision held that San Diego Unified prevailed with respect to the remaining issues. With respect to issues 11-13, which addressed the December 4, 2006 IEP, the OAH concluded that "the goals and objectives in the December 4, IEP were an appropriate means of determining if [Tyler] had made educational progress;" that "the evidence supports a finding that the December 4, 2006 IEP called for sufficient staff development and training in the use of [Tyler's] specialized software programs;" and that "the December 4 IEP was clear as to the program and services provided." *OAH Decision,* p. 67. With respect to issues 16-18, which addressed both the August 30, 2006 and December 4, 2006 IEPs, the OAH Decision concluded that "the evidence does not support a finding that there was any failure by the District to implement a 'stay put' placement" as of July 25, 2006; and that the IEPs did not fail to allow Tyler's parents' meaningful participation in the IEP process by failing to consider the parents' goals and objectives because "District carefully considered each of the many suggestions, comments and criticisms made by [Tyler's] mother." *Id.* at 72.

C.    The Brenneises' Complaint

On January 4, 2008, the Brenneises filed a Complaint against San Diego Unified (08cv28, Doc. # 1). The first claim for relief alleges that the Brenneises are a "party aggrieved" by the OAH Decision in that the "OAH decision erred in holding in favor of San Diego Unified with respect to issues 1-5 (Issues Related to Assessments); issues 6-9 (Issues Related to the August 30, 2006 Proposed IEP); issues 11-13 (Issues Related to the December 4, 2006 Proposed IEP); and issues 16-18 (Issues Related to both IEPs)." *Complaint,* ¶ 21. The second claim for relief alleges that the Brenneises are a prevailing party with respect to the due

1    process proceedings and are therefore entitled to reimbursement of reasonable attorneys' fees

2    incurred during the course of the due process proceedings.  The third claim for relief alleges

3    that Tyler has been denied a FAPE in violation of the IDEA on grounds that San Diego Unified

4    has "failed and refused to comply with the OAH Decision" with respect to the transition plan

5    and with respect to Tyler's G-Tube feedings.  *Brenneises' Complaint,* ¶¶ 30-31.  The fourth

6    claim for relief alleges that the Brenneises are entitled to reimbursement of reasonable

7    attorneys' fees incurred in connection with their successful CDE Compliance Complaint.

8            D.      San Diego Unified's Complaint

9            On January 4, 2008, San Diego Unified filed a Complaint against the Brenneises, their

10   attorney Steven Wyner and the law firm of Wyner & Tiffany (08cv39, Doc. # 1).  The first

11   cause of action alleges that the OAH Decision "wrongfully ordered [San Diego Unified] to

12   modify the IEP to require a school nurse to be present to personally assist [Tyler] with his g-

13   tube feedings and wrongfully concluded that [Tyler] would not have been safe at school under

14   the December 4, 2006 IEP."  *San Diego Unified Complaint,* ¶ 20.  The first cause of action

15   further alleges that the "OAH erroneously concluded that the [transition] plan denied [Tyler]

16   a FAPE."  *Id.,* ¶¶ 23, 24.  The second cause of action requests attorneys' fees on grounds that

17   the Brenneises, Steven Wyner and the law firm of Wyner & Tiffany acted in bad faith and for

18   an improper purpose with respect to the due process proceedings and subsequent litigation.

19   The third cause of action requests a declaration that the "IDEA's fees shifting provisions do

20   not entitle a parent to reimbursement for fees and costs incurred in filing a compliance

21   complaint" with the CDE, and that "the IDEA provides [San Diego Unified] with the

22   discretion to substitute one qualified provider for another in compliance with [Tyler's] IEP and

23   that [San Diego Unified] cannot be compelled to contract with non-certified NPAs in violation

24   of State law."  *Id.,* ¶¶ 33, 35.

25           E.      Subsequent Procedural History

26           On February 26, 2008, San Diego Unified filed the Motion to Consolidate cases 08cv29

27   and 08cv39.  On March 5, 2008, the Brenneises filed a Notice of Non-Opposition to the

28   Motion to Consolidate (08cv39, Doc. # 11).

On March 12, 2008, the Brenneises filed the "Motion to Dismiss Second Cause of Action against All Parties with Prejudice; to Dismiss Third Cause of Action against Steven Wyner and Wyner and Tiffany with Prejudice" ("Brenneises' Motion to Dismiss"). On April 3, 2008, San Diego Unified filed the "Amended Motion to Dismiss Third and Fourth Claims for Relief" ("San Diego Unified's Motion to Dismiss"). On April 10, 2008, San Diego Unified filed a Response in Opposition to the Brenneises' Motion to Dismiss (08cv39, Doc. # 21). On April 17, 2008, the Brenneises filed a Reply (08cv39, Doc. # 22). On April 28, 2008, the Brenneises filed a Response in Opposition to San Diego Unified's Motion to Dismiss (08cv28, Doc. # 17). On May 5, 2008, San Diego Unified filed a Reply (08cv28, Doc. # 20).

## Analysis

### I.    Motion to Consolidate

San Diego Unified contends that both parties seek review of the same underlying administrative hearing and an adjudication of their respective rights under the IDEA. San Diego Unified contends that "both cases pertain to the same student, same family, same school district, same school year, same counsel, and same offers of a free, appropriate public education." *Mot. to Consolidate,* p. 2. San Diego Unified requests that the Court consolidate cases 08cv28 and 08cv39 on grounds that both "actions involve common questions of law and fact, and consolidation would avoid the substantial danger of inconsistent adjudications involving the same parties and issues, avoid unnecessary duplication of effort by the parties and the Court, and prevent the presentation of duplicative evidence and argument." *Id.* at 1-2. The Brenneises do not oppose consolidation, and state that they "agree that consolidation is appropriate at this time." *Notice of Non-Opposition,* p. 2.

Rule 42 of the Federal Rules of Civil Procedure provides that "[i]f actions before the court involve a common question of law or fact, the court may: . . . (2) consolidate the actions." FED. R. CIV. P. 42(a). Rule 42 seeks to provide the Court with "broad discretion to decide how cases on its docket are to be tried so that the business of the court may be dispatched with expedition and economy while providing justice to the parties." *Huene v. United States*, 743 F.2d 703, 704 (9th Cir. 1984) (citing 9 CHARLES ALAN WRIGHT & ARTHUR

R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2381 (2d ed. & Supp. 2000).   In determining whether to consolidate cases, a court considers whether common questions of law and fact exist to warrant consolidation, and whether the interest of judicial convenience outweighs any potential for delay, confusion and prejudice that may result from such consolidation. *Bank of Montreal v. Eagle Associates*, 117 F.R.D. 530, 532 (S.D.N.Y. 1987).

Cases 08cv28 and 08cv39 involve the same parties, IEP, due process proceedings, and statute. No party opposes consolidation. The Court concludes that common questions of law and fact exist to warrant consolidation. The Court further concludes that the interest of judicial convenience outweighs any potential for delay, confusion and prejudice that may result from consolidation. The Court grants the Motion to Consolidate.

**II.   The Parties' Motions to Dismiss**

A.   Standard of Review

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the pleadings. *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978); *see* FED. R. CIV. P. 12(b)(6).   A complaint may be dismissed for failure to state a claim under Rule 12(b)(6) where the factual allegations do not raise the "right of relief above the speculative level." *Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1965 (2007).   Conversely, a complaint may not be dismissed for failure to state a claim where the allegations plausibly show "that the pleader is entitled to relief." *See id.* (citing FED. R. CIV. P. 8(a)(2)).   In ruling on a motion pursuant to Rule 12(b)(6), a court must construe the pleadings in the light most favorable to the plaintiff, and must accept as true all material allegations in the complaint, as well as any reasonable inferences to be drawn therefrom. *See Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).   However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Robertson v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1981).   "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended by* 275 F.3d 1187 (9th Cir. 2001).

1    B.    The Brenneises' Motion to Dismiss

2        (i)    Motion to Dismiss San Diego Unified's Second Cause of Action for
        Attorneys' Fees against the Brenneises, Steven Wyner, and Wyner and
3        Tiffany

4        The Brenneises move to dismiss San Diego Unified's second cause of action for

5    attorneys' fees against all parties on grounds that their complaint was neither meritless nor

6    frivolous.  The Brenneises emphasize that the due process hearing lasted 27 days; that the

7    OAH Decision is 75 pages long, includes 263 findings of fact, and identifies every issue raised

8    by the Brenneises in their complaint; and that the Brenneises presented a significant amount

9    of evidence as to every issue in dispute.  The Brenneises contend that these facts are "sufficient

10   to defeat any claim that the positions taken by the Brenneises and their attorneys were

11   frivolous." *Brenneises' Mot. to Dismiss,* p. 8; *Reply,* p. 7.  The Brenneises also contend that

12   they are the "prevailing party in this litigation as a whole" because "[b]oth the transition issue

13   and the health plan issue, on which the Brenneises prevailed, are significant." *Id.* at 9.  The

14   Brenneises contend that "neither the Brenneises nor their attorney can be faulted for filing a

15   due process request on which they substantially prevailed, nor can they be faulted for

16   continuing the litigation to a conclusion that resulted in a victory for the Brenneises." *Id.* at

17   10.

18       San Diego Unified contends that the Brennieses' Motion to Dismiss San Diego

19   Unified's cause of action for attorneys' fees is premature.  San Diego Unified contends that

20   "at this juncture, prevailing party status cannot be determined." *San Diego Unified's*

21   *Opposition,* p. 2.  San Diego Unified contends that it is statutorily entitled to attorneys' fees

22   under the IDEA, and that, "[w]hile the facts demonstrating this entitlement and the

23   reasonableness of amounts sought are obviously subject to proof, such statutory authorization

24   precludes dismissal here." *Id.* at 4.  San Diego Unified contends that the Motion to Dismiss

25   the second cause of action is also premature "in light of the fact intensive nature of the inquiry

26   into improper motive." *Id.* at 6.

27       20 U.S.C. section 1415(i) governs the jurisdiction of a district court to award reasonable

28   attorneys' fees to parties who prevail in an IDEA action.  20 U.S.C. § 1415(i)(3).  Section

1415(i)(3)(B)(i) provides:

> (i) In general. In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs –
>
> . . .
>
> (II) to a prevailing party who is a State educational agency or local educational agency against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation, or against the attorney of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation; or
>
> (III) to a prevailing State educational agency or local educational agency against the attorney of a parent, or against the parent, if the parent's complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation.

*Id.* A district court may, in its discretion, award attorneys' fees to a prevailing defendant-educational agency in an IDEA case "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Mr. L. v. Sloan,* 449 F.3d 405, 407 n. 2 (2d Cir. 2006).

San Diego Unified's Complaint alleges that "Defendants Steven Wyner, his firm, Wyner & Tiffany, and [Tyler's] parents, Allison Brenneise and Robert Brenneise, have continued to litigate after litigation has become clearly frivolous and have presented complaints for the improper purpose of harassing [San Diego Unified], causing unnecessary delay, and needlessly increasing the cost of litigation." *San Diego Unified Complaint,* ¶ 29. In support of its cause of action for attorneys' fees, San Diego Unified's Complaint alleges that the Brenneises refused to allow San Diego Unified to observe Tyler in his home-based program; inappropriately threatened to file suit against San Diego Unified's counsel personally; filed untimely motions, replies and evidence; repeatedly sought admission of late and excluded evidence; served improperly issued subpoenas duces tecum with no good cause and relevance; and sought to litigate issues not plead, issues lacking an evidentiary basis, and issues clearly outside the jurisdiction of the OAH. *Id.* San Diego Unified's Complaint alleges that "[a]s a result of the parents', Mr. Wyner's, and Wyner and Tiffany's bad faith conduct, the District has been forced to incur substantial attorneys' fees and costs." *Id.,* ¶ 39.

The Court concludes that San Diego Unified's Complaint alleges that the Brenneises, Steven Wyner and the law firm of Wyner & Tiffany have continued to litigate after litigation has become frivolous. The Court concludes that San Diego Unified has also alleged that the Brenneises, Steven Wyner and the law firm of Wyner & Tiffany have engaged in improper conduct with respect to the due process proceedings and subsequent litigation. The Court concludes that dismissal of San Diego Unified's second cause of action is improper at this early stage of the proceedings, and in light of the fact intensive nature of the inquiry into whether the Brenneises' action was frivolous, unreasonable or without foundation, or for an improper purpose. *See Taylor P. v. Missouri Dept. of Elementary and Secondary Educ.,* 2007 U.S. Dist. LEXIS 19771, * 21 (W.D. Mo. 2007) ("At this early stage in the litigation, the Court cannot say that the District will be unable to prove any set of facts demonstrating an improper purpose on the part of [the parents or their attorneys]. This fact-intensive inquiry is more properly resolved at summary judgment."). The Brenneises' Motion to Dismiss the second cause of action in San Diego Unified's Complaint is denied.

> *(ii)*     Motion to Dismiss San Diego Unified's Third Cause of Action for Attorneys' Fees with Respect to Steven Wyner and the Law Firm of Wyner & Tiffany

The Brenneises contend that "[w]hatever entitlement an attorney may have to be paid by the client, it is the client who is the prevailing party with standing to seek reimbursement of fees, not the attorney. To hold otherwise would make the attorney a 'necessary party' every time a fee application is filed in federal court." *Brenneises' Reply,* p. 8. The Brenneises contend that neither Steven Wyner nor the law firm of Wyner & Tiffany "were parties in the due process proceeding;" that "[t]he remedy ordered by the hearing officer was for the benefit of Tyler and his parents;" and that neither Steven Wyner nor the law firm of Wyner & Tiffany have a "a personal right to enforce [the OAH Decision] as against" San Diego Unified. *Brenneises' Mot. to Dismiss,* p. 10. The Brenneises contend that "whatever the fee agreement may provide, it cannot change the fact that if [San Diego Unified] can establish that the Brenneises are not legally entitled to recover attorneys' fees under the IDEA, their attorneys do not have a separate right to proceed against [San Diego Unified] for payment of their fees

1   and thus would be 'bound by the judgment in the instant case.'" *Brenneises' Reply,* p. 9.

2        San Diego Unified contends that Steven Wyner and the law firm of Wyner & Tiffany

3   are appropriate defendants in the third cause of action because "[c]omplete relief cannot be

4   afforded without Steven Wyner and Wyner and Tiffany being bound by the judgment." *San*

5   *Diego Unified Opposition,* p. 9.  San Diego Unified contends that Steven Wyner and the law

6   firm of Wyner & Tiffany "are claiming an interest in the subject of the action, as their fees are

7   bound up in it.  After all, it was the Brenneises' attorneys who demanded attorneys' fees from"

8   San Diego Unified.  *Id.* at 10.  San Diego Unified contends that "[t]he fact that the Brenneises

9   . . . affirmatively seek the attorneys fees they incurred in filing the compliance complaint

10  supports the need for Steven Wyner and Wyner and Tiffany to be bound by the judgment in

11  the instant case." *Id.* at 11.

12       San Diego Unified's third cause of action alleges that "Mr. Wyner sent [San Diego

13  Unified] a demand for $7,113.50 in attorneys' fees and costs allegedly incurred in filing" the

14  CDE Compliance Complaint.  *Complaint,* ¶ 34.  San Diego Unified alleges that it "has and

15  therefore will continue to experience actual hardship in the form of demands for attorneys' fees

16  and costs incurred by the parents in filing compliance complaints with CDE." *Id.,* ¶ 35.

17       San Diego Unified requests a judicial declaration that the IDEA does not authorize

18  reimbursement for attorneys' fees incurred in filing a compliance complaint, and alleges that

19  it has received  demands for payment of fees from Steve Wyner and the law firm of Wyner &

20  Tiffany to support its request for declaratory relief.  A judicial declaration that the IDEA does

21  not permit reimbursement for attorneys' fees related to compliance complaints would prevent

22  both the Brenneises and their attorneys from seeking reimbursement for attorneys' fees related

23  to the CDE Compliance Complaint.  If the Court were to hold that reimbursement of such fees

24  is not authorized by the IDEA, Steven Wyner and the law firm of Wyner & Tiffany would be

25  prevented from making any further demand for attorneys' fees from San Diego Unified related

26  to the CDE Compliance Complaint.  Steven Wyner and the law firm of Wyner & Tiffany

27  therefore have in interest in the Court's resolution of San Diego Unified's third cause of action.

28  The Court concludes that dismissal of San Diego Unified's third cause of action against Steven

1   Wyner and the law firm of Wyner & Tiffany on grounds that they are not proper parties is

2   improper at this stage of the proceedings.  The Brenneises' Motion to Dismiss the third cause

3   of action in San Diego Unified's Complaint against Steven Wyner and the law firm of Wyner

4   & Tiffany is denied.

5           C.      San Diego Unified's Motion to Dismiss

6                   (i)      Motion to Dismiss the Brenneises' Third Claim for Denial of a Free and
                             Appropriate Education in Violation of the IDEA
7

8           San Diego Unified contends that "Plaintiffs admit that they are party aggrieved on every

9   issue raised at the hearing except related to the g-tube feedings and OT services (issues 10, 14

10  and 15).  In fact, Plaintiffs' Third Claim for Relief pleads that they prevailed on the above

11  issues at the administrative hearing." *San Diego Unified Mot. to Dismiss,* p. 5-6.  San Diego

12  Unified contends that the Brenneises lack standing to challenge San Diego Unified's

13  implementation of the OAH Decision because "[t]heir simultaneous request in the [Amended

14  Complaint] to challenge the decision and to enforce it is fundamentally incongruous." *Id.*  San

15  Diego Unified also contends that the Brenneises have not exhausted their administrative

16  remedies because the Brenneises "are challenging the very same aspects of the decision that

17  they are seeking to enforce, and therefore the decision is not final for purposes of

18  enforcement." *Id.* at 8.

19          The Brennieses contend that they "have standing not only with respect to those issues

20  on which it did not prevail, but as to any issue raised in their complaint, including those issues

21  on which it prevailed but which [San Diego Unified] subsequently failed to implement."

22  *Brennieses' Opposition,* p. 2.  The Brenneises contend that their third claim for relief alleges

23  a separate violation of the IDEA for the failure to implement Tyler's IEP as modified by the

24  OAH Decision because the "failure to implement a material element in a Student's IEP is a

25  clear violation of the IDEA for which remedies under the IDEA are available." *Id.* at 5-6.  The

26  Brennieses contend that there is no exhaustion requirement with respect to a violation that

27  arises out of a failure to comply with a hearing office decision or a failure to implement an

28  IEP.  *Id.* at 6-7.

An integral part of the IDEA requires that participating states establish procedures that give parents "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6). After presenting a complaint regarding a school district's compliance with the IDEA, parents are entitled to an "impartial due process hearing." *Id.* § 1415(f). A decision of the due process hearing "shall be final," except that "any party involved in such hearing may appeal such decision." *Id.* §§ 1415(i)(1)(A), (2)(A). A "party aggrieved by the findings and decision" of a due process hearing may bring a civil action to challenge the findings and decision of the due process hearing in state or federal court. *Id.* § 1415(i)(2). A party may also bring a civil action to enforce the school district's failure to implement a due process decision. *Porter v. Bd. of Trs. of Manhattan Beach Unified School Dist.,* 307 F.3d 1064, 1067 (9th Cir. 2002). The parent need not exhaust administrative remedies "to enforce a due process decision in court." *Id.*

The federal courts "cannot simultaneously enforce an administrative order and consider an appeal of that same administrative order." *S.M. v. Cupertino Union Sch. Dist.,* 2006 U.S. Dist. LEXIS 39567, * 7 (N.D. Cal. 2006) (quoting *Moubry v. Indep. Sch. Dist. No. 696,* 951 F. Supp. 867, 885-86 (D. Minn. 1996)). *Moubry* noted the "incongruity presented by the Plaintiff's simultaneous petition to enforce" a due process decision rendered pursuant to the IDEA while, "at the same time, challenging the propriety of that decision." 951 F. Supp. at 886. The *Moubry* court dismissed the plaintiff's claim that the school district failed to implement a decision of a due process hearing on grounds that the plaintiff sought to challenge certain portions of the hearing officer's decision and enforce others. The court stated that "the Plaintiff's claim is fundamentally flawed from what, at this point, is only an anticipatorily adverse ruling by this Court." *Id.*

The IDEA grants the Court jurisdiction to consider a challenge to an adverse decision rendered pursuant to an IDEA due process hearing. The Court can also consider a request to enforce an unappealed decision rendered pursuant to an IDEA due process hearing. However, the Brenneises' third claim does not fit within either of these categories. Instead, the

08cv28 WQH (WMc)

Brenneises have appealed some aspects of the OAH Decision and request that the Court enforce the implementation of other portions of the same administrative order. Specifically, the Brenneises challenge the OAH Decision insofar as it ruled against them on issues 1-9,11-13, and 16-18. Issues 11-13 and 16-18 address the December 4, 2006 IEP. The Brenneises simultaneously seek to enforce the OAH Decision insofar as it ruled in their favor on issues 10, 14, and 15. Issues 10, 14 and 15 also address the December 4, 2006 IEP. The issues in the OAH Decision pertaining to the December 4, 2006 are interrelated. The Court's ruling on the Brenneises' appeal may impact the enforceability of the December 4, 2006 IEP as a whole. The Court concludes that the Brenneises' third claim to enforce the implementation of the December 4, 2006 IEP is premature because the Brenneises seek to enforce "what, at this point, is only an anticipatorily adverse ruling by this Court." *Moubry,* 951 F. Supp. at 886. The Court concludes that dismissal of the Brenneises' third claim is proper. San Diego Unified's Motion to Dismiss the Brenneises' third claim is granted.

> *(ii)* Motion to Dismiss the Brenneises' Fourth Claim for Reimbursement of Attorneys' Fees and Costs Incurred in Pursuing a Compliance Complaint under the IDEA

San Diego Unified contends that "compliance complaints are not brought under Section 1415, and are in fact not mentioned in the IDEA at all; . . . compliance complaints are a creature of the regulatory process." *Mot. to Dismiss,* p. 9. San Diego Unified contends that "attorneys fees and costs incurred related to compliance complaints [are not] reimbursable under Section 1415 of the IDEA" because a compliance complaint does not constitute a "proceeding" within the meaning of section 1415. *Id.* at 10. San Diego Unified contends that California's Complaint Resolution Procedure ("CRP"), pursuant to which the Brenneises filed the CDE Compliance Complaint, also "lacks the necessary judicial imprimatur required for plaintiffs to achieve prevailing party status under the IDEA." *Id.* at 5.

The Brenneises contend that "attorney fee awards [are] available in actions and proceedings under § 1415 as well as in impartial due process proceedings," and that a CDE compliance procedure is an "action or proceeding" within the meaning of section 1415. *Brenneises' Opposition,* p. 8. The Brenneises further contend that the CDE Compliance

Complaint does not lack the necessary judicial imprimatur required for the Brenneises to achieve prevailing party status under the IDEA because "a CDE compliance order is enforceable by a court, either on an action initiated by the CDE or by the parent under section 1983." *Id.* at 12.

"Distinct from IDEA's due process requirements, the U.S. Department of Education promulgated regulations pursuant to its general rulemaking authority requiring each recipient of federal funds, including funds provided through IDEA, to put in place a complaint resolution procedure ('CRP')." *Porter,* 307 F.3d at 1067; *see* 34 C.F.R. §§ 300.660-662. A parent may challenge a school district's compliance with the IDEA by filing a complaint pursuant to a state's CRP. 34 C.F.R. §§ 300.508-513.

Section 1415 provides that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees." 20 U.S.C. § 1415(i)(3)(B). "[T]o the extent that a CRP complaint addresses a dispute that is subject to resolution in a § 1415 due process hearing, the CRP is a proceeding 'brought under' § 1415" and a court may award reasonable attorneys' fees incurred with respect to the CRP complaint. *Lucht v. Molalla River School District,* 225 F.3d 1023 (9th Cir. 2000). The "CRP and the due process hearing procedure are simply alternative (or even serial) means of addressing a § 1415 [] complaint" and, "although different, a CRP is no less a proceeding under § 1415 than is a due process hearing." *Id.* at 1028-29.

After the *Lucht* decision, the Supreme Court held that the "catalyst theory" is not a permissible basis for determining prevailing party status to grant an award of attorneys' fees under the Fair Housing Amendments Act. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.,* 532 U.S. 698, 610 (2001). In holding that the *Buckhannon* rule applies to the attorneys' fees provision of the IDEA, the Ninth Circuit has stated that the "term 'prevailing party,' as it is used in various attorney's fees statutes, requires a 'material alteration of the legal relationship of the parties." *Shapiro v. Paradise Valley Unified School District No. 69,* 374 F.3d 857, (9th Cir. 2004) (quoting *Buckhannon,* 532 U.S. at 604). However, *Buckhannon* and its progeny have not disturbed *Lucht's* holding that a CRP is a

proceeding within the meaning of section 1415, which was approved by the Ninth Circuit in *P.N. v. Seattle School District No. 1,* 474 F.3d 1165, 1169 (9th Cir. 2007). In *P.N.,* the Ninth Circuit held that "the IDEA authorizes an action solely to recover attorneys' fees and costs, even if there has been no administrative or judicial proceeding to enforce a student's rights under the IDEA." *Id.* The Ninth Circuit stated that "although there may remain some uncertainty as to what might constitute a 'judicial imprimatur,' the existence of some judicial sanction is a prerequisite in this circuit for a determination that a plaintiff is a 'prevailing party' and entitled to an award of attorneys' fees as part of costs under the IDEA." *Id.*

In the Brenneises' fourth claim, they seek an award of reasonable attorneys' fees incurred in connection with the CDE Compliance Complaint. *Brenneises' Complaint,* ¶ 43. The parties do not dispute that the Brenneises' CDE Compliance Complaint, which challenged the implementation of the ESY IEP, was filed pursuant to California's CRP and addressed a dispute that is subject to resolution in a section 1415 due process hearing. The Court concludes that the Brenneises have stated a claim for attorneys' fees related to their CDE Compliance Complaint because it was filed pursuant to California's CRP and constitutes a proceeding within the meaning of section 1415. The Court concludes that the CDE Compliance Complaint has the necessary judicial imprimatur required for the Brenneises to achieve prevailing party status under the IDEA because the Brenneises "may exercise the right to bring a civil action in a district court" with respect to proceedings pursuant to California's CRP. Cal. Ed. Code § 56505(k); 34 C.F.R. § 300.516; *see also Porter,* 307 F.3d at 1067. San Diego Unified's Motion to Dismiss the Brenneises' fourth claim is denied.

## Conclusion

IT IS HEREBY ORDERED that the Motion to Consolidate (08cv28, Doc. # 9) is **GRANTED.** Cases 08cv28 WQH (WMc) and 08cv39 WQH (WMc) shall be consolidated under one case number, 08cv28 WQH (WMc). All further pleadings shall be filed in 08cv28 WQH (WMc).

1    IT IS FURTHER ORDERED that (1) the "Motion to Dismiss Second Cause of Action

2    against All Parties with Prejudice; to Dismiss Third Cause of Action against Steven Wyner and

3    Wyner and Tiffany with Prejudice" (08cv39, Doc. # 19) filed by T.B., a minor, Allison

4    Brenneise and Robert Brenneise, his parents, Steven Wyner, and the law firm of Wyner and

5    Tiffany is **DENIED**; and (2) the "Amended Motion to Dismiss Third and Fourth Claims for

6    Relief" (08cv28, Doc. # 15) filed by San Diego Unified School District is **GRANTED as to**

7    **the third claim for relief** and **DENIED as to the fourth claim for relief**.

8

9    DATED:  June 23, 2008

10

11                              **WILLIAM Q. HAYES**
                                 United States District Judge