*Wyner & Tiffany*
Attorneys at Law
Steven Wyner (SBN 77295)
swyner@specialedlaw.org
Marcy J.K. Tiffany (SBN 78421)
mtiffany@specialedlaw.org
970 W. 190th Street, Suite 302
Torrance, California 90502
Phone: (310) 225-2880
Fax: (310) 225-2881
Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYLER BRENNEISE, et al., | Case No.: 08cv28 WQH (WMc); |
| | 08cv39 WQH (WMc) |
| Plaintiffs, | |
| | 1) ANSWER TO SDUSD'S |
| | COMPLAINT FOR RELIEF AND |
| vs. | ATTORNEYS' FEES |
| | |
| SAN DIEGO UNIFIED SCHOOL | 2) COUNTERCLAIM UNDER |
| DISTRICT | SECTION 504 AND THE |
| | AMERICANS WITH DISABILITES |
| Defendant. | ACT OF 1990 AND REQUEST FOR |
| | JURY TRIAL |
| | |
| | HON. WILLIAM Q. HAYES |

TYLER BRENNEISE ("Student") ALLISON BRENNEISE AND ROBERT

BRENNEISE ("Parents"), and Steven Wyner and Wyner & Tiffany (collectively,

"Defendants"), by and through their attorneys of record, hereby answer the Complaint

For Relief and Attorneys' Fees Under the Individuals With Disabilities Education Act

1

("IDEA') [20 U.S.C. § 1415(i)(2)] And Declaratory Relief filed by SDUSD SAN DIEGO UNIFIED SCHOOL DISTRICT ("SDUSD" OR "District"), originally assigned case number 08cv39, now consolidated under case number 08cv28, as indicated below.

## ADMISSIONS AND DENIALS

1.    Answering paragraph 1 of the Complaint, Defendants admit that SDUSD's action was brought as an appeal to portions of the California Office of Administrative Hearings ("OAH") decision in the consolidated cases *San Diego Unified School District v. T.B.* and *T.B., Allison Brenneise, and Robert Brenneise v. San Diego Unified School District*, OAH Case Nos. N2006120002/N2007010848.  Defendants admit that OAH's decision followed a due process hearing which litigated whether SDUSD offered Student a free appropriate public education ("FAPE") for the 2006-2007 school year and whether SDUSD complied with the requirements of the IDEA in assessing Student.  Except as admitted herein, Defendants deny each and every allegation contained therein.

2.    Defendants admit this court has jurisdiction.

3.    Defendants admit that venue is proper in this court.

4.    Answering paragraph 4 of the Complaint, Defendants admit the allegations contained therein.

5.    Answering paragraph 5 of the Complaint, Defendants admit that Student has autism and late-diagnosed Phenylketonuria ("PKU").  Defendants deny each and every remaining allegation contained therein.

6.    Answering paragraph 6 of the Complaint, Defendants admit that Steven Wyner is a duly licensed attorney in the State of California, and that Steven Wyner is a resident of the State of California and that Mr. Wyner represented Allison Brenneise, Robert Brenneise and T.B. during the due process hearing which is the subject of this action, and deny each and every remaining allegation contained therein.

2

7.      Answering paragraph 7, Defendants admit that Wyner & Tiffany is a law partnership organized and existing under California law with principal offices located in Torrance California, and that Wyner & Tiffany represented Allison Brenneise, Robert Brenneise and T.B. during the due process hearing which is the subject of this action, and deny each and every remaining allegation contained therein.

8.      Answering paragraph 8 of the Complaint, to the extent that SDUSD's allegations refer to the United States Code and/or individual cases, those code sections and cases are the best evidence of their contents.

9.      Answering paragraph 9 of the Complaint, Defendants deny each and every allegation contained therein.

10.     Answering paragraph 10 of the Complaint, Defendants deny each and every allegation contained therein.  To the extent that SDUSD's allegations refer to an IEP meeting or the contents of an IEP document, the IEP document is the best evidence of the contents of that document.

11.     Answering paragraph 11 of the Complaint, Defendants deny each and every allegation contained therein.  To the extent that SDUSD's allegations refer to an IEP meeting or the contents of an IEP document, the IEP document is the best evidence of the contents of that document.

12.     Answering paragraph 12 of the Complaint, Defendants deny each and every allegation contained therein.  To the extent that SDUSD's allegations refer to an IEP meeting or the contents of an IEP document, the IEP document is the best evidence of the contents of that document.

13.     Answering paragraph 13 of the Complaint, Defendants deny each and every allegation contained therein.  To the extent that SDUSD's allegations refer to an IEP meeting or the contents of an IEP document, the IEP document is the best evidence of the contents of that document.

3

14.    Answering paragraph 14 of the Complaint, Defendants deny each and every allegation contained therein. To the extent that SDUSD's allegations refer to an IEP meeting or the contents of an IEP document, the IEP document is the best evidence of the contents of that document.

15.    Answering paragraph 15 of the Complaint, Defendants deny each and every allegation contained therein. To the extent that SDUSD's allegations refer to a due process compliant(s), the complaint(s) is the best evidence of its contents.

16.    Answering paragraph 16 of the Complaint, Defendants deny each and every allegation contained therein.

17.    Answering paragraph 17 of the Complaint, Defendants deny each and every allegation contained therein. To the extent that SDUSD's allegations refer to a due process compliant(s), the complaint(s) is the best evidence of its contents.

18.    Answering paragraph 18 of the Complaint, Defendants admit that OAH convened the due process hearing on May 14-June 1, June 11-June 13, June 19-20 and July 11-20, 2007. Defendants admit that an Administrative Law Judge ("ALJ") employed by OAH issued a decision on October 3, 2007 ("OAH Decision") and that OAH served the OAH Decision on October 5, 2007. Defendants do not have any basis of knowledge for when SDUSD received the Decision.

19.    Answering paragraph 19 of the Complaint, to the extent that SDUSD's allegations refer to the OAH Decision, the OAH decision is the best evidence of the ALJ's order as to the issues presented. Defendants otherwise deny each and every remaining allegation in this paragraph.

20.    Answering paragraph 20 of the Complaint, to the extent that SDUSD's allegations refer to the OAH Decision, the OAH decision is the best

4

evidence of the ALJ's order as to the issues presented.  Defendants otherwise deny each and every remaining allegation in this paragraph.

21.  Answering paragraph 21 of the Complaint, to the extent that SDUSD's allegations refer to the California Education Code and/or California Legislative History, those code sections and legislative statements are the best evidence of their contents.  To the extent that SDUSD's allegations refer to the OAH Decision, the OAH decision is the best evidence of the ALJ's order as to the issues presented.  Defendants otherwise deny each and every remaining allegation in this paragraph.

22.  Answering paragraph 22 of the Complaint, To the extent that SDUSD's allegations refer to the OAH Decision, the OAH decision is the best evidence of the ALJ's order as to the issues presented.  Defendants otherwise deny each and every remaining allegation in this paragraph.

23.  Answering paragraph 23 of the Complaint, to the extent that SDUSD's allegations refer to the United States Code and/or California Education Code, those code sections are the best evidence of their contents.  To the extent that SDUSD's allegations refer to an IEP meeting or the contents of an IEP document, the IEP document is the best evidence.  To the extent that SDUSD's allegations refer to the OAH Decision, the OAH decision is the best evidence of the ALJ's order as to the issues presented. Defendants otherwise deny each and every remaining allegation in this paragraph.

24.  Answering paragraph 24 of the Complaint, to the extent that SDUSD's allegations refer to the OAH Decision, the OAH decision is the best evidence of the ALJ's order as to the issues presented.  To the extent that SDUSD's allegations refer to the California Education Code, those code sections are the best evidence of their contents.  To the extent that SDUSD's allegations refer to a particular motion(s) and/or order(s), that motion(s) and

5

order(s) is the best evidence of its contents. Defendants otherwise deny each and every remaining allegation in this paragraph.

25. Answering paragraph 25 of the Complaint, to the extent that SDUSD's allegations refer to the United States Code, those code sections are the best evidence of their contents. Defendants otherwise deny each and every remaining allegation in this paragraph.

26. Answering paragraph 26 of the Complaint, Defendants deny each and every allegation contained therein. To the extent that SDUSD's allegations refer to the OAH Decision, the OAH decision is the best evidence of the ALJ's order as to the issues presented. To the extent that SDUSD's allegations refer to an IEP meeting or the contents of an IEP document, the IEP document is the best evidence.

27. Answering paragraph 27 of the Complaint, Defendants incorporate by reference their answer to paragraphs 1 through 26, inclusive, of this Answer.

28. Answering paragraph 28 of the Complaint, to the extent that SDUSD's allegations refer to the United States Code, those code sections are the best evidence of their contents. Defendants otherwise deny each and every remaining allegation in this paragraph.

29. Answering paragraph 29 of the Complaint, Defendants deny each and every allegation contained therein.

30. Answering paragraph 30 of the Complaint, Defendants deny each and every allegation contained therein.

31. Answering paragraph 31 of the Complaint, Defendants incorporate paragraphs 1-30, inclusive, of this Answer.

32. Answering paragraph 32 of the Complaint, Defendants deny each and every allegation contained therein.

33. Answering paragraph 33 of the Complaint, Defendants deny each and every allegation contained therein.

6

34.    Answering paragraph 34 of the Complaint, to the extent that SDUSD's allegations refer to a CDE Compliance Complaint(s), a CDE decision(s), or correspondence, those documents are the best evidence of their contents. Defendants otherwise deny each and every remaining allegation in this paragraph.

35.    Answering paragraph 35 of the Complaint, to the extent that SDUSD's allegations refer to the United States Code and/or individual cases, those code sections and cases are the best evidence of their contents.  Defendants otherwise deny each and every remaining allegation in this paragraph.

**PRAYER FOR RELIEF**

36.    In response to each and every prayer for relief requested in SDUSD's Complaint, Defendants deny that SDUSD is entitled to any of the relief requested.

**AFFIRMATIVE DEFENSES**

Defendants further assert the following affirmative defenses to the Complaint.

**First Affirmative Defense**

(Failure to State a Claim Upon Which Relief Can Be Granted)

Defendants allege and state herein that the Complaint, and each and every cause of action stated therein, fails to state a claim upon which relief can be granted as against these defendants.

**Third Affirmative Defense**

(Failure to Exhaust Administrative Remedies)

Defendants allege and state herein that SDUSD's purported claims for relief set as set forth in the Complaint indicate a failure of SDUSD to exhaust administrative remedies.

**Fourth Affirmative Defense**

(Statue of Limitations)

7

Defendants allege and state herein that the Complaint is barred by the applicable statute of limitations.

## Fifth Affirmative Defense

### (Unclean Hands)

Defendants allege and state herein that SDUSD is barred from recovery herein under the doctrine of unclean hands.

## Sixth Affirmative Defense

### (Laches)

Defendants allege and state herein that SDUSD is barred from recovery herein under the doctrine of laches.

## Seventh Affirmative Defense

### (Lack of Standing)

Defendants allege and state herein that SDUSD lacks standing to maintain any cause of action against Defendants as to all of the causes of action contained in the Complaint.

## Eighth Affirmative Defense

### (Mootness)

Defendants submit that SDUSD's claims are moot.

## Ninth Affirmative Defense

### (Waiver)

Defendants submit that SDUSD's claims are barred by the doctrine of waiver.

## Tenth Affirmative Defense

### (Estoppel)

Defendants submit that SDUSD's claims are barred by the doctrine of estoppel.

## Twelfth Affirmative Defense

### (Public Policy)

Defendants submit that SDUSD's claims are barred as contrary to public policy.

8

# COUNTERCLAIM FOR RELIEF
# UNDER SECTION 504 AND THE ADA

## PRELIMINARY STATEMENT

1. This action is brought pursuant to Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 ("Section 504"); and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 ("ADA").

## JURISDICTION, VENUE AND EXHAUSTION

2. This is a civil action over which this court has original jurisdiction under 28 U.S.C. § 1331, 1343(a)(3) and 1343(a)(4).

3. Venue in this court is proper under 20 U.S.C. § 1391(b) because SDUDS is located within San Diego County, which is within the jurisdiction of this district and all of the events that are the subject of this Counterclaim took place within the jurisdiction of this district.

4. Plaintiffs have exhausted all remedies available to them under the IDEA as required by 20 U.S.C. § 1415(i)(2) and, in any case, should be excused from further exhaustion on the grounds that further exhaustion would be futile.

## PARTIES

5. TYLER BRENNEISE ("Student") is a citizen of the United States, who at the time of the violations alleged herein, resided with his parents in San Diego, California, which is located within San Diego County and the boundaries of the San Diego Unified School District.   At all times relevant herein, student was, and continues to be, a minor, having been born on January 25, 1994.

6. ALLISON BRENNEISE and ROBERT BRENNEISE are Student's mother and father, (collectively, "Student's Parents") and are citizens of the United States, who, at the time of the violations alleged herein, resided within San Diego, California, which is within San Diego County and the boundaries of the District.

9

7.  SAN DIEGO UNIFIED SCHOOL DISTRICT ("SDUSD" or "District") is a public school district organized and existing under the laws of the State of California and is located within San Diego County.  At all times relevant herein, SDUSD was the local education agency responsible for providing Student with full and equal access to the public education programs and activities it offers in compliance with the requirements of state and federal law, and for providing Student, who is eligible for special education, with a "free appropriate public education" ("FAPE") under the IDEA, the California Education Code, and Section 504, for which SDUSD receives federal financial assistance.

### FACTUAL BACKGROUND & PROCEDURAL HISTORY

8.  Student suffers from late diagnosed Phenylketonuria ("PKU"), a genetic disorder.  As a result of his PKU, student requires strict monitoring of his intake of phenylalanine ("PHE"), and daily gastrostomy tube ("G-Tube") feeding, without which he is at risk of serious bodily harm.

9.  The Due Process Hearing in the consolidated cases (OAH Case Nos. N2006120002/N2007010848) was held in San Diego, California before Administrative Law Judge ("ALJ") Susan Ruff on May 14-June 1, June 11-13, June 19-20, and July 11-20, 2007.

10. On or about October 3, 2007, the Hearing Office issued its Decision, which was served via US Mail on October 5, 2007, and received by the Parties on October 8, 2007.

11. The Hearing Office Decision held that Student's G-Tube feeding was a specialized physical health care service, that was required to be included in his IEP in order for Student to safely attend school and access his education.

12. On or about March 28, 2008, Student and his mother relocated to Minnetonka, Minnesota, where Student was enrolled in public school.

13. On or about April 10, 2008, Student began attending Minnetonka Middle School West, a public school located in Minnetonka, Minnesota pursuant to an

Brenneises' Answer and Counterclaim

IEP that includes the G-Tube feedings necessary to allow him to attend public school safely.

### FIRST COUNTERCLAIM

### (AGAINST SDUSD FOR VIOLATION OF SECTION 504 AND THE ADA)

14. Student and Student's Parents reallege and incorporates by reference as though fully set forth herein, paragraphs 1 - 13, inclusive of this Counterclaim.

15. The G-Tube feedings required by Student are specialized healthcare services that are required to be included in the Student's IEP by both federal and state law. Moreover, California regulations mandate that "specific continuing specialized physical health care services" must be included in the IEP.

16. The District failed and refused to accommodate Student's disability by providing for the G-Tube feedings in his IEPs for the 2006-2007 and 2007-2008 school years, resulted in Student's being excluded from school and being denied a FAPE solely on account of his disability, in violation of Section 504 and the ADA.

17. In order to obtain a FAPE for Student, Student and his mother were forced to relocate to Minnetonka, Minnesota, where Student was able to obtain an IEP that includes the necessary G-Tube feedings required to allow him to attend school safely.

18. Because California law and the regulations are clear and unequivocal with respect to the requirement that G-Tube feedings must be included in the Student's IEP, the District's failure to do so was knowing and intentional, so as to give rise to damages under Section 504 and the ADA.

19. As a result of the District's violation of Student's rights under Section 504 and the ADA, Student suffered injury including, but not limited to, educational injury, hedonic injury in that Student was deprived of the opportunity to engage in school activities and the opportunity to enjoy the society of other children of his age, and emotional distress.

Brenneises' Answer and Counterclaim

20. As a result of the District's violation of Student's rights under Section 504 and the ADA, Student's parents suffered financial and other damages, including, but not limited to, time and expense his parents were forced to incur to educate Student in his home, lost wages, lost educational opportunities for Student's mother, expenses incurred in connection with relocating Student to Minnetonka, Minnesota, and emotional distress.

**SECOND COUNTERCLAIM**

**(AGAINST SDUSD FOR VIOLATION OF SECTION 504 AND THE ADA)**

21. Student and Student's Parents reallege and incorporate by reference as though fully set forth herein, paragraphs 1 - 20, inclusive of this Counterclaim.

22. The OAH Decision determined that Student's December 4, 2006 IEP, as modified by the OAH Decision's Order, should be implemented.

23. The OAH Decision modified Student's December 4, 2006 IEP to include the specialized physical healthcare services Student requires for his G-Tube feedings.  In pertinent part, OAH's decision required that Student's IEP include the following language under the heading of health nursing services (page 2 of IEP):   "G-Tube feeding will be scheduled to occur daily in the nurse's office. A school nurse will be present and will personally assist the student with the student's G-Tube feeding.  The G-Tube feeding will occur at the time(s) and in the manner designated in a doctor's order form from Student's current physician."

24. The OAH Decision further modified Student's IEP transition plan in the December 4, 2006 IEP to provide that: 1) "Student's mother as a participant in each of the collaboration meetings described in the transition plan . . .;" and 2) "until Student reaches phase four of the transition plan, Student's District-funded DIS services will continue with his current NPA providers and at his current levels of service, except for the services of ACES."

12

Brenneises' Answer and Counterclaim

25. On November 7, 2007, over a month after the OAH Decision was issued on October 3, 2007, the District filed a Motion for Clarification of the OAH Decision with OAH asserting that the OAH Decision was unclear with respect to the District's obligation to provide Student with Occupational Therapy ("OT") services from his then current OT provider.

26. On November 21, 2007, ALJ Susan Ruff denied the District's Motion for Clarification, asserting that the District's contention that the OAH Decision was unclear was not well taken and reiterating her order that the District provide Student with OT services from his then current OT provider.

27. With respect to the transition plan, the District failed and refused to comply with the OAH Decision, even after OAH's Order Denying Motion for Clarification, because, *inter alia*,: 1) the District failed and refused to continue to provide Student with OT services from his then current OT provider; and 2) the District failed and refused to provide Student with his then-current DIS services at his then-current levels of service.

28. With respect to Student's G-Tube feedings, the District failed and refused to comply with the OAH Decision by refusing to implement Student's December 4, 2006 IEP as modified by the OAH Decision in that the District failed and refused to ensure the presence of a school nurse to personally assist with Student's G-Tube feedings.

29. As a result of the District's failure and refusal to comply with the OAH Decision, Student was denied the receipt of OT services and excluded from attending public school due to the District's failure to ensure that Student's physical healthcare needs are met. Thus, Student was discriminated against solely on the basis of his disability, and denied a FAPE in violation of Section 504 and the ADA.

13

30. The District's obligation to comply with a Hearing Office Decision is clear and unequivocal, and thus the failure to do so is knowing and intentional, giving rise to damages under Section 504 and the ADA.

31. As a result of the District's violation of Student's rights under Section 504 and the ADA, Student suffered injury including, but not limited to, educational injury, hedonic injury in that Student was deprived of the opportunity to engage in school activities and the opportunity to enjoy the society of other children of his age, and emotional distress.

32. As a result of the District's violation of Student's rights under Section 504 and the ADA, Student's parents suffered financial and other damages, including, but not limited to, time and expense his parents were forced to incur to educate Student in his home, lost wages, lost educational opportunities for Student's mother, expenses incurred in connection with relocating Student to Minnetonka, Minnesota, and emotional distress.

**THIRD COUNTERCLAIM**

**(AGAINST SDUSD FOR VIOLATION OF SECTION 504 AND THE ADA)**

33. California law provides that all special education students are entitled to be instructed by qualified teachers, even if they are required to stay at home for reasons of health.

34. Student was required to remain at home because the District failed and refused to accommodate his need for a G-Tube feeding, during which time the District failed and refused to provide Student with a qualified teacher to provide him with academic instruction at home.

35. As a result of this conduct, the District discriminated against Student solely on account of his disability and deprived him of a FAPE in violation of Section 504 and the ADA.

Brenneises' Answer and Counterclaim

36. The obligation to comply with California law is clear and unequivocal, and the failure to comply was thus knowing and intentional, giving rise to damages under Section 504 and the ADA.

37. As a result of the District's violation of Student's rights under Section 504 and the ADA, Student suffered injury including, but not limited to, educational injury, hedonic injury in that Student was deprived of the opportunity to engage in school activities and the opportunity to enjoy the society of other children of his age, and emotional distress.

38. As a result of the District's violation of Student's rights under Section 504 and the ADA, Student's parents suffered financial and other damages, including, but not limited to, time and expense his parents were forced to incur to educate Student in his home, lost wages, lost educational opportunities for Student's mother, expenses incurred in connection with relocating Student to Minnetonka, Minnesota, and emotional distress.

**REQUEST FOR JURY TRIAL**

39. Student and Student's Parents request a jury trial with respect to their counterclaims.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

Brenneises' Answer and Counterclaim

1

**PRAYER FOR RELIEF**

2    **WHEREFORE, Student and Student's Parents  request judgment as follows:**

3        40.  Award compensatory education to Student and money damages to Student and

4              Student's Parents.

5        41.  Award reasonable attorneys' fees and costs incurred in connection with the

6              current proceeding.

7        42.  For such additional relief as the court determines is appropriate.

8

9     Dated: July 14, 2008                               Respectfully submitted,

10

11                                                *Wyner  &  Tiffany*

12                                                ATTORNEYS AT LAW

13

14                                                /S/ Marcy J.K. Tiffany
                                                   Attorneys for Defendants

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16

CERTIFICATE OF SERVICE

I, the undersigned, declare under penalty of perjury, that I am over the age of 18 and that I am not a party to this action.  On July 14, 2008, I served this ANSWER TO SDUSD'S COMPLAINT FOR RELIEF AND ATTORNEYS' FEES AND COUNTERCLAIM UNDER SECTION 504 AND THE AMERICANS WITH DISABILITES ACT OF 1990 on the San Diego Unified School District by serving their counsel of record electronically, having verified on the court's CM/ECF website that such counsel is currently on the list to receive emails for this case, and that there are no attorneys on the manual notice list.

Dated: July 14, 2008                                        /S/ Marcy J.K. Tiffany

Brenneises' Answer and Counterclaim